## City of Meriden *v.* Highway Commissioner
### (two cases)

House, C. J., Cotter, Loiselle, Bogdanski and Longo, Js.

Argued October 9—decision released December 2, 1975

*Morton H. Greenblatt,* assistant corporation counsel, with whom, on the brief, was *Albert L. Coles,* for the appellant (plaintiff) in each case.

*William A. McQueeney,* assistant attorney general, with whom, on the brief, was *Carl R. Ajello,* attorney general, for the appellee (defendant) in each case.

BOGDANSKI, J. The parties to these appeals are the same as those who appeared before this court in the case of *Meriden* v. *Ives,* 165 Conn. 768, 345 A.2d 13, and the questions reserved to us relate to our decision in that case. We there held that where the highway commissioner had condemned portions of two public parks located in Meriden, the provisions of § 7-131j of the General Statutes required the state to provide sufficient funds to enable the city to acquire substitute parkland comparable to that taken, and to compensate the city for any damage to the remainder which resulted from the taking. It was stated that the measure of damages should be computed by determining the difference between the replacement cost of the parkland prior to and subsequent to the taking, and a new trial, limited to the issue of the amount of damages, was ordered. The parties have now propounded eleven questions[1] for our advice, several of which reveal that considerable confusion exists with respect to the application of that formula. The answer to question "k," which asks whether a public park has monetary value prior

---

[1] "The questions upon which advice is desired are as follows:

(a) In determining damages in these cases, must the before and after rule be applied?

(b) If the answer to (a) is yes, is the before value to be computed by determining the cost of replacement of the park before the taking with land and facilities which are comparable in all meaningful respects?

(c) If the answer to (a) is yes, must the after value of the remaining park land similarly be computed by determining the cost of replacement of the park land remaining after the taking with land and facilities which are comparable in all meaningful respects?

(d) Since a public park is not commonly bought and sold in the open market, should the referee apply the substitute facilities doctrine to insure that sufficient damages will be awarded to finance a replacement of the park land taken?

(e) Since this Court has said that Section 7-131j adopts the substitute facilities method of valuing land without market value,

to a taking, is dispositive of the issues raised by this reservation, and it is therefore unnecessary for us to respond specifically to the other questions as propounded. See *E. & F. Construction Co.* v. *Ives,* 156 Conn. 416, 419, 242 A.2d 768.

By the great weight of authority, the general standard for measuring compensation for the taking of property by eminent domain is its "market value." 4 Nichols, Eminent Domain (3d Ed.) § 12.1; see, e.g., *Kimball Laundry Co.* v. *United States,* 338 U.S. 1, 5, 69 S. Ct. 1434, 93 L. Ed. 1765; *Feigenbaum* v. *New Britain Housing Site Development Agency,* 164 Conn. 254, 258, 320 A.2d 824; *Colaluca* v. *Ives,* 150 Conn. 521, 530, 191 A.2d 340; *Winchester* v. *Cox,* 129 Conn. 106, 114, 26 A.2d 592. Equating the market value of the property taken with "just compensation" has been accepted because of the conviction that market value roughly corresponds to the value of the property

---

should the value of the park land before and after the taking be computed in determining the cost of replacement with land and facilities which are comparable in all meaningful respects?

(f) If the answer to (e) is yes, is the difference between the before valuation and the after valuation an amount sufficient to replace all that is taken?

(g) If the answer to (f) is yes, is this difference the amount of just compensation to be paid?

(h) Does the partial taking by the State of Connecticut by eminent domain proceedings of a municipal park in Connecticut eliminate the restriction to park use of the remaining park land?

(i) Should a state referee appointed to reassess damages to a municipality arising out of a partial taking of a municipal park value the entire park before the taking and the part remaining after the taking based on the assumption the partial taking eliminated the restriction of the land to park use?

(j) If the answer to either (h) or (i) is no, shall the state referee, appointed to reassess the damages occasioned by a State taking of a portion of a municipally owned park, value the part taken in accordance with the provisions of Section 7-131 of the General Statutes of Connecticut?

(k) Before a taking, does a public park have any monetary value?"

to the owner, and because it is usually readily capable of determination. 1 Orgel, Valuation Under Eminent Domain (2d Ed.) § 15. When the property is of a kind seldom exchanged, however, it lacks a "market price," and recourse must be had to other methods of valuation. See, e.g., *Kimball Laundry Co.* v. *United States,* supra, 6. Land which is restricted to park use clearly falls within this category. It would be unrealistic to conclude that parkland is valueless because there are no "willing buyers" or "willing sellers." It is, of course, difficult to ascribe a monetary value to trees, rocks, fields, and the aesthetic environment of a park. Section 7-131j of the General Statutes, however, eases that difficulty by requiring the state to provide the municipality with land comparable to that taken, or to provide sufficient funds for that purpose. The "market value" measure of damages is rejected in favor of one which measures compensation in terms of replacement costs. If an entire park were taken, the amount of compensation would be the cost to replace the parkland and improvements as they existed on the date of the taking, with parkland and improvements which are similar in all meaningful respects. *Meriden* v. *Ives,* supra, 776. All necessary costs, including but not limited to the acquisition cost of comparable land, the cost to improve the land so as to make it suitable for park purposes, and the cost of erecting facilities, should be considered. Costs should be discounted, however, to reflect any benefit which accrues to the condemnee by reason of an increased useful life of improvements replaced. *United States* v. *Certain Property in Manhattan,* 403 F.2d 800, 804 (2d Cir.). This measure of compensation has been termed the "substitute facilities" doc-

trine. In its pure form, it has no true relationship to "valuation," but is instead a measure of "just compensation." *United States* v. *564.54 Acres of Land,* 506 F.2d 796 (3d Cir.); cf. *Moss* v. *New Haven Redevelopment Agency,* 146 Conn. 421, 151 A.2d 693. When an entire tract of parkland is taken, General Statutes § 7-131j requires an application of the "substitute facilities" doctrine. See *Meriden* v. *Ives,* supra, 776.

When part of a tract of land is taken for the public use, "just compensation" includes recovery for the part taken as well as recovery for damage visited upon the remainder. E.g., *United States* v. *Dickinson,* 331 U.S. 745, 750, 67 S. Ct. 1382, 91 L. Ed. 1789. Where the property in question has a market value, one of two formulas can be applied to determine the damages to which the condemnee is entitled, both of which, theoretically, arrive at the same amount. 4A Nichols, op. cit., § 14.232 [1]. Damages may be computed by adding the market value of the land taken to the difference between the market value of the remainder before the taking and its market value after the taking.[2] Cf. *Sorensen* v. *Cox,* 132 Conn. 583, 586, 46 A.2d 125; *Appeal of Phillips,* 113 Conn. 40, 154 A. 238. More commonly, the easily applied "before and after rule" is used. Damages are calculated by subtracting the market value of the remainder after the taking from the market value of the property just prior to the taking. *Connecticut Ry. & Lighting Co.* v.

---

[2] The property taken should be valued in terms of the entire tract of which it was a part. The precise formula to be applied is (value of property taken + added value of part taken as a result of being part of an entire tract) + (value of remainder area as part of an entire tract — value of remainder area after the taking) = just compensation. 4A Nichols, Eminent Domain (3d Ed.) § 14.231.

*Redevelopment Commission,* 161 Conn. 234, 239, 287 A.2d 362; *Andrews* v. *Cox,* 129 Conn. 475, 478, 29 A.2d 587. The difference, which is the diminution in market value sustained by the owner, reflects both the market value of the land taken and any severance damage to the remainder caused by the taking. Similarly, if there has been a partial taking in a situation requiring a strict application of the substitute facilities doctrine, the amount of compensation is determined by a "before and after rule." By deducting the market value of any remainder free for disposition (assuming elimination of public use restrictions) from the cost of replacing the entire tract prior to the taking, the condemnee is assured of receiving sufficient funds to acquire a substitute facility, but no more. See *United States* v. *Certain Land in Brooklyn,* 346 F.2d 690, 695 (2d Cir.); *Westchester County Park Commission* v. *United States,* 143 F.2d 688, 692 (2d Cir.).

A strict application of the substitute facilities doctrine to the facts of the instant case, however, is not called for by § 7-131j of the General Statutes. That statute requires the state to grant sufficient funds to the condemnee to replace the *land condemned,* not sufficient funds to replace the entire facility.[3] If an entire tract of land were taken the statute would require that the cost to replace the entire facility be granted.

We held in *Meriden* v. *Ives,* supra, that severance damages, if any, to the remaining parkland

---

[3] General Statutes § 7-131j reads, in relevant part: "If the state . . . takes any land . . . which is restricted to conservation or recreation use in accordance with an established open space program, . . . the state . . . shall provide comparable land to be included in such program or shall grant or pay to the municipality sufficient funds to be used for such purpose . . . ."

were recoverable by the city of Meriden. "Apart from its provision for an alternate means of making just compensation, § 7-131j does not alter the rule of *Winchester*. Although the statute refers in terms only to compensation for land that is taken, it is not inconsistent with, and does not abrogate, the rule of *Winchester* that full compensation for the entire taking must be made." *Meriden* v. *Ives*, supra, 774–75.

In the usual situation, severance damages are measured in terms of the diminution in market value of the remainder before and after the taking. In the present case, a similar treatment is warranted. Except where an entire tract is taken, thus requiring strict application of the substitute facilities doctrine under § 7-131j, that statute essentially "values" the property taken in terms of its replacement costs. Since § 7-131j adopts the substitute facilities method of "valuing" land; *Meriden* v. *Ives*, supra, 776; it follows that any damage caused to the remainder should be measured in terms of the decreased cost to replace that remainder. It would be incongruous to measure severance damages in terms other than the diminution of replacement costs of the remainder. If the state were not required to compensate for that reduction, it could avoid making full compensation under § 7-131j by dividing a single condemnation into two separate condemnations. A partial condemnation would require payment of an amount necessary to replace the land taken. Subsequently, the remainder could be taken and its replacement costs paid. Any lessening in costs to replace the remainder would thus accrue to the benefit of the condemnor state, not the condemnee municipality.

Measurement of severance damages in terms of replacement costs may be accomplished through calculations parallel to those employed when dealing with a market value standard. The difference between the cost to replace the remainder as part of the entire tract just prior to the time of the taking, and the cost to replace the remainder after the taking, is equal to the severance damages recoverable. That amount, plus the cost to replace the property condemned, is equal to the entire damage recoverable.

In the alternative, and more simply, the entire damage may be calculated through the application of the "before and after" rule. The replacement costs of the remainder after the taking should be deducted from the replacement costs of the entire tract at the time of the taking. The difference represents the cost to replace the land taken, plus any diminution in replacement costs, i.e., severance damages. Relevant considerations in determining the "before" costs include, but are not limited to, the actual cost to acquire land similarly situated, the costs of improving that land to a state where it is the functional equivalent of the park as it stood, and the increased useful life of any improvements replaced. Similar considerations, which take into account any adverse effects occasioned by the state's use of the condemned property, apply in determining the "after" costs.

The above described method of determining just compensation ascribes a monetary value to a park before the taking which is equal to the cost to replace that park. For the purposes of determining just compensation in a case where § 7-131j applies to a partial taking of municipal parkland,

the parkland is thus treated as having a monetary value equal to its replacement costs just prior to the taking.

To question "k" in the reservation, which alone requires a specific answer, we answer "Yes."

No costs will be taxed in favor of any party.

In this opinion the other judges concurred.