[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal by William J. Kerin from the assessment of damages in the amount of $12,000 deposited in court by the defendant for the partial taking by eminent domain, on July 11, 1991, of his property situated on the easterly side of and known as No. 1530 Sullivan Avenue, in the Town of South Windsor, pursuant to General Statutes Section 13a-73(b), for the layout, alteration, extension, widening, change of grade or improvement of the state-highway known as Route 194.
Said premises taken are more particularly bounded and described as follows: Westerly by Sullivan Avenue, Route 194, 345 feet, being the entire frontage of the plaintiff's property; Northerly by land n/o/f/o Gaetano F. Jodice, 6.5 feet, more or less; Easterly by the Owner's remaining land, being designated "Taking Line" on the map hereinafter referred to, 340 feet, more or less; and Southerly by land of the Town of South Windsor, 8.0 feet.
Said parcel contains 0.057 of an acre, more or less, together with all appurtenances thereon, all of which more particularly appears on a map entitled: "Town of South Windsor, Map showing Land Easement Acquired From William J. Kerin by the State of Connecticut, Conn. Rte. 194, Scale 1" = 40', November 1989, Robert W. Gubala, Transportation Chief Engineer — Bureau of Highways," revised to 6/10/91 (132-112-1).
Said premises were taken together with the following easements and CT Page 4007 right on portions of the Owner's remaining land:
1. A full and perpetual easement to slope for the safety of the highway and remove, use or retain excavated material within an area of 0.102 of an acre, more or less, as more particularly shown on said map.
2. An easement for a temporary work area for the purpose of access for construction equipment, to grade, seed and to otherwise restore any areas disturbed during the reconstruction of Route 194, Sullivan Avenue, within an area of 0.026 of an acre, more or less, as more particularly shown on said map. This easement terminated upon completion of the reconstruction project.
3. A right to construct driveways and sanitary sewer within a total area of 0.007 of an acre, more or less, as more particularly shown on said map. Although this right terminated automatically upon completion of the work by the State, the construction thereunder remains on the property of the Owner.
The plaintiff's property is located in the central section of South Windsor about 1000 feet north of the intersection of Sullivan Avenue and Ellington Road, two of its principal residential/commercial highways. Before the taking the parcel contained about 1.23 acres improved with a commercial building housing the U.S. Post Office for the Town of South Windsor. The neighborhood is interspersed with a variety of additional public uses, such as the town hall and a church.
Pursuant to an "Agreement To Lease" accepted by the U.S. Government on June 19, 1968, the corporate predecessor to the plaintiff agreed to erect a building which t, as to be the main Post Office at South Windsor. The basic lease term was 10 years, with four additional five year options, at an annual rental of $23,160. The Post Office Department has exercised its last option since the taking.
The building was erected according to Post Office Department specifications, and contains 7182 square feet, plus a platform of 1390 square feet. The owner was also required to provide 26,734 square feet of parking space, 2388 square feet of sidewalks, and 15,252 square feet of landscaping.
As built for the Post Office Department, the building was set back from Sullivan Avenue in conformity with the zoning requirements. When the front yard setback line was increased to 50 feet for the RR Rural Residential Zone, this structure became a legal nonconforming use. On May 7, 1991, the zone was changed to RO Residential Office Zone, having the same front yard CT Page 4008 requirement. Because the proposed taking two months later reduced the front yard to about 23 feet, making the nonconformance now about 27 feet, or 54%, the plaintiff received a variance from the Zoning Board of Appeals on April 4, 1991. Additionally, the permanent sloping easement is as near as 7 feet, more or less, from the post office building.
At the time of taking, the post office was serviced by two septic tanks which were located within the easement area. This manner of sewage disposal had been found to be a nuisance and ordered abated by the town health authorities on March 9, 1990, because of the overflow of sewage effluent into Sullivan Avenue. The plaintiff, in turn, on April 30, 1990, brought a federal action against the U.S. Postal Service to abate this nuisance because of an alleged increase in use and number of employees under the lease.
On being informed that the State of Connecticut was bearing responsibility for the cost of sewer line construction on Sullivan Avenue and laterally to the post office building, the Town, on January 15, 1991, ordered that the plaintiff connect the structure to the public sewer in Sullivan Avenue upon its installation. After the completion of the sewer main in the street and sewer lateral to the building, the town Environmental Health Officer on May 17, 1993, ordered its connection to the building immediately. In compliance, the plaintiff, on June 1, 1993, forwarded to the town two checks for this purpose, one in the amount of $25 for a hookup permit, and the second in payment of a $2000 assessment for connecting to the town's sewer system. The cost of installing the sewer main in Sullivan Avenue and of installing the lateral main to the post office building was paid by the State under its agreement with the Town of South Windsor to tie into its sewer system. This agreement was confirmed to the plaintiff by letter of the town Environmental Health Officer on May 24, 1993, after which the above payments to the town for connection to its sewer system were made.
Both parties are in agreement, and the court so finds, that the highest and best use of the subject property is for the continuation of its present commercial use. The improvement and reconstruction of Sullivan Avenue, Route 194, from a two-lane to a four-lane highway related to and facilitated the transformation of the area including and surrounding the subject property to a town governmental/commercial area. This has resulted in an increase in the market value of the subject property, which is located in the core or central area of the Town of South Windsor.
The plaintiff's appraiser, John Farrell, Jr., utilized both the sales comparison approach and the income approach to value the subject property before and after the taking. Using the market approach for valuation before CT Page 4009 the taking, he valued the land in its entirety at $235,000. In the same manner, he valued the land and building in their entirety at $490,000. Valuing the improvements by the income approach, he estimated these to be $250,000. Adding this estimate to the previous value of the land only at $235,000, he found the subject property before the taking, valued in its entirety by the income approach, to be $485,000. This he concluded was the fair market value of the plaintiff's property before the taking.
In determining the after taking value of the remainder, the plaintiff's appraiser valued the land only by the market approach to be $200,000. He estimated the valuation of the entire remainder by the market approach to be $380,000. Valuing only the improvements of the remainder by the income approach, he estimated this to be $180,000. With this amount added to the value of the remaining land only at $200,000, he found the subject property after the taking to be valued in its entirety by the income approach at $380,000. This he concluded was the fair market value of the remainder after the taking.
Notwithstanding the town's order of January 15, 1991 for the sewer connection, the plaintiff, on or about January 27, 1992, solicited and received a bid for a replacement of the septic system in the amount of $13,125, which with additional specified work totaled $24,975. The work contemplated by this bid was contrary to the mandatory order of one year earlier for the connection by the plaintiff to the public sewer main being installed in Sullivan Avenue and laterally to the plaintiff's building at the State's expense. Notwithstanding the futility of this bid, the plaintiff's appraiser utilized the amount to enhance his appraisal of damages as a cost to cure. Additionally he found severance damages of 15% of the remainder in the amount of $53,250 "caused by the loss of both utility and marketability." His estimated value of the remainder less severance damages being rounded to $300,000, and the estimated value of the entirety before the taking being $485,000, he calculated the plaintiff's damages due to the taking to be $185,000.
The defendant's appraiser, Brian C. Marchi, is an in-house appraiser employed by the defendant. Prior to his advancement to that position, he was employed as a property agent by the defendant. He made two value finding appraisals of the subject property, reaching different results in each instance. His first valuation was as of July 19, 1990, about one year prior to the taking. The second valuation was made on April 30, 1992, but the valuation was related back to the taking date of July 11, 1991.
In the first appraisal he did not do a before and after taking valuation. Based upon three purported comparables located in South Windsor, two being single family residences and the third a child care center, unit CT Page 4010 priced at $144,444, $163,551 and $104,071 per acre, respectively, he estimated the value of the subject property to be $90,000 per acre. By this acre unit valuation, his estimate of the square foot unit value was $2.07. There is no adjustment grid or chart to show his calculation of this valuation per acre. He did not make the before and after valuation required under our eminent domain law for the partial taking, and he found no severance damages to the remainder. In estimating the damages from the proposed taking, he multiplied the area taken in fee, namely 0.057 of an acre, by the unit acreage value and found its value to be $5130. He then valued the permanent easement over 0.102 of an acre at 50% of the acreage value or $4590. The temporary easement over 0.026 of an acre was valued at 10% for one year at $234. The total value of the land and easements to be taken was $9954, which he rounded to $9950. To this sum he added a contributory value for the improvements such as trees, shrubs and paving of $2000 for a total estimate of $11,950 damages, which he rounded to $12,000. The award of damages made at the taking on July 11, 1991, was predicated on this unconvincing and inadequate appraisal.
The appraiser's second appraisal was made on April 30, 1992, but related back to the date of taking. In this appraisal he did employ a type of before and after approach to valuation, but he did not evaluate the entire property. His appraisal treated the property as though it lay vacant, without any building on it. His before and after valuations of the subject property were calculated on the land alone. The comparables this time were different from the earlier ones. Two were on Route 5, a divided four lane interstate route in the western portion of town. On one of these there was a small restaurant. The other two sales were of vacant land. The vacant property on Route 5 was the only comparable in the same zone as the subject property. These comparables were inferior to the subject property which is in the center of the town.
Based on the three comparables that he used, Marchi valued the land only before the taking at $3.50 per square foot for a total of $188,000. By comparison with the unit value per acre of $90,000 in his earlier appraisal of almost two years before, by this square foot unit calculation he estimated the per acre value now to be $152,460, an increase of 69.4%. He also included in the total before value various site improvements affected by the acquisition. These items he believed to have a contributory value of $2000, which, added to the land value, increased the total before value of the subject property to $190,000.
The appraiser utilized the same sales in determining the after taking value as prior to the acquisition. Utilizing the same per square foot value of $3.50 for the reduced area of the remainder, he estimated the unencumbered area of about 1.072 acres or 46,716 square feet to be valued at CT Page 4011 $163,506. The encumbered area of about 0.102 of an acre he valued at 50% of the per square foot unit value at $7775, rounding the total of these two items to $171,000. Assigning 10% of the per square unit value to the temporary rights, this valuation was rounded to $500. The total after taking valuation by these estimates was $171,000, plus $500 for temporary rights. After deducting the after taking valuation from the before taking valuation, his estimate of the damages due to the taking was $19,000, plus $500 for temporary rights. At no time did the defendant increase his payment to the clerk of court to this amount from the original deposit of $12,000. As in the earlier appraisal, no severance damages to the remainder were found. With this conclusion, the court disagrees.
Since the method of waste disposal was improved by the State's installation of the public sewer and lateral line to the post office building, he concluded that this was, in effect, a cost to cure which was incurred by the defendant. With this the court agrees. The payments by the plaintiff to the town of $25 for a hookup permit and of $2000 as an assessment for connecting to the town's sewer system were proper charges against the real estate to which all owners of property in town adjoining a sewer main were subject for connecting to it. The prior septic tank system for waste disposal was found to be inadequate by the town health authorities according to the record even before the taking of the subject property by the defendant. In this improvement of sewage disposal method at the expense of the defendant, the plaintiff benefitted [benefited] without cost. The town's connection permit fee and assessment payable by the property owner are not chargeable to the defendant in this taking.
A state referee sitting as a court on appeals in condemnation cases is more than just a trier of fact or an arbitrator of differing opinions of witnesses. He is charged by the General Statutes and the decisions [decisions] of our courts with the duty of making an independent determination of value and fair compensation in the light of all circumstances, the evidence, his general knowledge and his viewing of the premises. Minicucci v. Commissioner of Transportation, 211 Conn. 383, 388
(1989); Birnbaum v. Ives, 163 Conn. 12, 21-22 (1972); Feigenbaum v. Waterbury, 20 Conn. App. 148, 153 (1989). It is his task to reach a result that gives the plaintiff, as nearly as possible, a fair equivalent in money as just compensation for the property taken. Mathis v. Redevelopment Agency, 165 Conn. 622, 623 (1973); Feigenbaum v. Waterbury, supra, 153-54.
"When only a part of a tract is taken for the public use, `just compensation' includes recovery for the part taken and recovery for any damages visited upon the remainder which result from the taking. Bowen v, [.] Ives, 171 Conn. 231, 238, 368 A.2d 82; Meriden v. Highway Commissioner, 169 Conn. 655, 659, 363 A.2d 1094. `The ordinary rule for CT Page 4012 measuring damages where a portion of a tract of land is taken is to determine the difference between the market value of the whole tract as it lay before the taking and the market value of what remained of it thereafter, taking into consideration the changes contemplated in the improvement and those which are so possible of occurrence in the future that they may reasonably be held to affect market value.' Lefebrve v. Cox,129 Conn. 262, 265, 28 A.2d 5 [1942]. The court should consider any and all damages which will foreseeably follow from the proper construction of the project, including any damage to the remainder which is a necessary, natural and proximate result of the taking. Budney v. Ives, 156 Conn. 83, 88,239 A.2d 482." D'Addario v. Commissioner of Transportation, 172 Conn. 182,184-85, 374 A.2d 163 (1976); Darling v. Waterford, 7 Conn. App. 485, 486
(1986).
The elements of the plaintiff's damages due to the taking on July 11, 1991, are: (1) the loss of fee to about 0.057 of an acre along the entire 345 feet of the property frontage for an average depth of 7 feet; (2) a full and perpetual easement to slope for the safety of the highway along almost the entire length of the highway frontage, and to remove, use or retain excavated material within an area of about 0.102 of an acre; (3) an easement for a temporary work area for access of equipment within an area of about 0.026 of an acre; (4) a temporary right to construct driveways and sanitary sewer within an area of about 0.007 of an acre, such construction thereunder remaining; (5) a reduction of the street frontage from 345 feet to 340 feet; (6) a reduction of the front yard to about 23 feet, and an increase in its nonconformity to about 27 feet; (7) the location of the permanent sloping easement to about 7 feet from the post office building; (8) physical loss of improvements and landscaping; and (9) a decrease in both utility and marketability of the remainder.
After viewing the site of the subject property, and after giving due consideration to the opinions of expert witnesses and to a knowledge of the elements that establish value, I find that the before taking value of the subject property was $440,000, and that the after taking value is $394,000. Damages, therefore, are assessed at $46,000.
Judgment may enter for the plaintiff in the amount of $46,000, less $12,000 already paid, or an excess of $34,000, with interest at 10% per annum on such excess from the date of taking to the date of payment, together with costs and a reasonable appraisal fee of $4500.
William C. Bieluch State Trial Referee CT Page 4013