[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal and application for review of the statement of compensation filed in connection with the partial taking of the plaintiff's property at Nos. 457-469 Park Street and 17-19 Squire Street, Hartford, in condemnation proceedings brought by the defendant.
Pursuant to General Statutes Section 8-129, on April 10, 1992, the defendant took the subject property by eminent domain and filed a statement compensation fixing damages at $75,000. This taking was in the context of the defendant's Park/Squire/Wolcott Street Redevelopment Project.
The plaintiff has appealed under the provisions of General Statutes Section 8-132. In the adjudication of this appeal and review of statement of compensation, the court heard evidence, including the testimony of witnesses and expert witnesses, examined appraisal reports and other documentary evidence, and viewed the subject property and its surrounding area.
On or about November 18, 1985, the plaintiff purchased for $160,000 a single piece or parcel of land, together with the buildings thereon, two formerly separate, but adjoining properties, known as Nos. 457-469 Park Street and 17-19 Squire Street, more particularly bounded and described as follows: Beginning at a point 50 feet west of the intersection of the southerly line of Park Street and the westerly line of Squire Street; thence proceeding in a westerly direction along the southerly line of Park Street N 88 degrees 23' 29" W, 71 feet; thence proceeding in a southerly direction S 1 degrees 13' 23" W 150.61 feet; thence proceeding in a westerly direction N 88 degrees 23' 30" W, 9 feet; thence proceeding in a southerly direction S 1 degrees 13' 23" W 51.20 feet; thence proceeding in CT Page 4221 an easterly direction S 88 degrees 23' 30" E, 130 feet; thence proceeding in a northerly direction along the westerly line of Squire Street N 1 degrees 13' 23" E, 51.20 feet; thence proceeding in a westerly direction N 88 degrees 23' 30" W, 50 feet; thence proceeding in a northerly direction N 1 degrees 13' 23 E, 150.61 feet to the point and place of beginning.
The subject property contained approximately 17,250 square feet, or 0.396 of an acre of land, with frontage of 71 feet on Park Street and 51.20 feet on Squire Street, the configuration being generally rectangular and L-shaped. The maximum depth is 201.82 feet. The topography is level at street grade and throughout. Access to the site is provided by a curb cut on Squire Street. Six unpaved and unmarked parking spaces exist at the rear of the building on Squire Street. Both Park and Squire Streets are fully improved city streets, Park Street being a major thoroughfare westerly with bus lines from Main Street to the city line at West Hartford.
At the time of taking, the portion fronting on Park Street was located within the B-3 Linear Business District, while the Squire Street portion was zoned R-2, Medium Density Residential District. In July 1986, a fire completely destroyed the building known at Nos. 457-469 Park Street and the plaintiff was compelled to demolish the remains of the structure at a cost of $19,000. The residential building at Nos. 17-19 Squire Street is improved with a three story walk-up six-family apartment having a gross floor area of 4752 square feet constructed in 1910. After the taking this building was completely rehabilitated in 1991 at considerable expense.
The subject property is located in Hartford's Frog Hollow Neighborhood. Park Street runs through the geographic center of the neighborhood and exerts a strong influence on the district's characteristics. Park Street is a busy commercial area with many retail stores, restaurants, churches, branch library, and a firehouse. Located on Park Street is a shopping center containing a major retail outlet, two banks, a supermarket, a hardware store, and a drug store within fairly close proximity to the subject property. Housing in the area varies from multi-tenant apartment dwellings to apartment units on upper stories of commercial buildings.
This portion of Park Street is a self-contained retail/commercial/housing area. The now vacant land at what was CT Page 4222 formerly such a mix of uses at 457-469 Park Street lends itself to the restoration by its owner or redevelopment by the defendant of these uses. The restructuring by the plaintiff of 17-19 Squire Street and the improvements and modernized renovations made by the plaintiff to the six apartments there acknowledge and affirm the neighborhood's desire to improve and redevelopment of the Park Street area of Hartford.
An earlier proposed private development or contribution to the redevelopment of that section of the city was evidenced by the execution of an option agreement on May 31, 1988, by and between the plaintiff, as seller, and Park Street Development Committee, of 300 Summit Street (Trinity College), Hartford, as buyer, for the sale and purchase of the subject property for a term of one year at the price of $807,295, with credit for all option monies paid before the exercise of the option by the buyer. The sum of $28,000 was paid at the signing of the option. The option was not exercised.
On February 15, 1990, the defendant adopted a redevelopment plan for the area of the subject property. This was approved by the City Council on September 24, 1990. The development project proposed by La Casa de Puerto Rico, Inc., and Broad Park Development Corporation in response to the defendant's request was adopted. This is known as the Park/Squire/Wolcott Street Project. This project consists of a combination of rehabilitation and new construction containing 35 housing units and 11,026 square feet of retail/commercial space located on approximately 1.74 acres between Park and Squire Streets in the Frog Hollow neighborhood. Relevant to our inquiry is the following description: "Keeping with the vibrant Park Street retail/commercial flavor, these structures [on the corner of Park and Squire Streets] will house retail/commercial space on the ground floor with rental housing units above."
As part of this development project, the defendant on April 10, 1992, took by eminent domain the 457-469 Park Street portion of the plaintiff's subject property, having a frontage and rear line of 71 feet and depth of 150.61 feet. The taking consisted of 10,720 square feet, or 0.246 of an acre of formerly improved, but then vacant, land in the Park Street retail/commercial/residential corridor extending from Washington Street on the east to Zion Street on the west. The Squire Street portion remains in the ownership of the plaintiff after this taking. This consists of 6326 square feet, or about 0.15 of an CT Page 4223 acre, on which is located the six-unit apartment building described earlier.
The plaintiff's appraisers, Dean C. Amadon and David M. Mann, citing the need for quality affordable housing in the city, despite the population decline and increased apartment vacancies, and concluding that in the subject neighborhood unmet demand is partially a function of the net loss of residential units in the area since 1980, concluded that the highest and best use of the condemned property was its improvement for multi-family residential development of 12 apartments and retention of the 6 residential apartments remaining on Squire Street. The court disagrees with this opinion.
The sales comparison approach was considered applicable to both segments of the subject property, the vacant and condemned portion as well as the remaining improved part. To estimate the market value of the Park Street segment, the appraisers analyzed recent sales of land for multi-family residential development. By this approach, they estimated the value of the Park Street frontage, being the exact portion taken by the defendant, to be $100,000. To value the frontage on Squire Street, being the portion remaining after the take, they analyzed market sales of comparable six-unit apartment buildings including the value of land. In this manner they estimated the value of the Squire Street portion of the original property at $200,000. This estimate they reconciled by the income capitalization approach. By this combined methodology, they found that the fair market value of the subject property in its entirety at the time of taking was $300,000.
The market value of the subject property remaining after the taking was estimated at $200,000. The value of the subject after condemnation was found to be equal to the remaining value in the Spruce Street segment. The value and utility of this remainder was not considered to be affected by the condemnation. In their opinion, the damages resulting from the taking was $100,000. "Since the subject property AFTER is neither enhanced nor adversely affected by the taking, support for additional severance damages is lacking." With this conclusion the court again disagrees.
The defendant's appraiser, Ernest J. Lavissiere, found that the highest and best use of the entire parcel of the subject property at the taking would be most productively utilized for CT Page 4224 commercial development. The frontage on Park Street could be developed as a retail building and the rear portion with parking and access. With this conclusion the court agrees.
The defendant's appraiser used the direct sales comparison approach to estimate the fair market value at taking of the 10,726 square feet of excess hand zoned B-3 and having a frontage of 71 feet on Park Street and depth of 150.61 feet to be $75,000, thereby confirming his earlier valuation when he had considered this portion as a total taking independent of the land to the rear fronting on Squire Street.
He used two approaches in estimating the value of 17-19 Squire Street, the direct sales comparison approach, which produced a value of $159,000, and the income approach, which produced a value of $175,000. Since this type of property is primarily purchased as an investment, he relied on the income approach and concluded that 17-19 Squire Street had a value of $175,000, including land and building.
In summary, Lavissiere's appraisal of the entire property before and after the taking is as follows:
 17-19 Squire Street with existing improvements and 6534 square feet of land $175,000 10,726 square feet of excess land 75,000 ------ TOTAL $250,000 Adjustment of plottage — 10% of commercial land 7,500 ----- TOTAL VALUE BEFORE TAKING $257,500 TOTAL VALUE AFTER TAKING 175,000 ------- SEVERANCE $ 82,500
The reasoning behind these calculations as stated by Lavissiere was "that the value of the commercial portion of the subject property is enhanced by its assemblage with the adjacent residential parcel. It is enhanced because it would have a means in ingress and egress on Squire Street, away from heavy traffic on Park Street. The commercial portion of the property's value would be enhanced by 10% or $7,500. The two parcels together have a higher value than the two separately. After the taking, the portion of the value attributable to the commercial area goes with the taking and there is no damage to the residential CT Page 4225 section. There is, however, a severance damage in excess of the value of the commercial parcel if owned separately." The court agrees with this analysis, but not the calculation shown.
A state referee sitting as a court on appeals in condemnation cases is more than just a trier of fact or an arbitrator of differing opinions of witnesses. He is charged by the General Statutes and the decisions of our courts with the duty of making an independent determination of value and fair compensation in the light of circumstances, the evidence, his general knowledge and his viewing of the premises. Minicucci v. Commissioner of Transportation, 211 Conn. 383, 383 (1989); Birnbaum v. Ives, 163 Conn. 12, 21-22 (1972); Feigenbaum v. Waterbury, 20 Conn. App. 148, 153 (1989). It is his task to reach a result that gives the plaintiff, as nearly as possible, a fair equivalent in money as just compensation for the property taken. Mathis v. Redevelopment Agency, 165 Conn. 622, 623 (1978); Feigenbaum v. Waterbury, supra, 153-54.
"When only a part of a tract is taken for the public use, `just compensation' includes recovery for the part taken and recovery for any damages visited upon the remainder which result from the taking. Bowen v. Ives, 171 Conn. 231, 238, 368 A.2d 82; Meriden v. Highway Commissioner, 169 Conn. 655, 659,363 A.2d 1094. `The ordinary rule for measuring damages here a portion of a tract of land is taken is to determine the difference between the market value of the hole tract as it lay before the taking and the market value of what remained of it thereafter, taking into consideration the changes contemplated in the improvement and those which are so possible of occurrence in the future that they may reasonably be held to affect market value.' Lefebrve v. Cox, 129 Conn. 262, 265, 28 A.2d 5 [1942]. The court should consider any and all damages which will foreseeably follow from the proper construction of the project, including any damage to the remainder which is a necessary, natural and proximate result of the taking. Budney v. Ives, 156 Conn. 83, 88, 239 A.2d 482." D'Addario v. Commissioner of Transportation, 172 Conn. 182,184-85, 374 A.2d 163 (1976); Darling v. Waterford, 7 Conn. App. 485,486 (1986).
After viewing the site of the subject property, and after giving due consideration to the opinions of expert witnesses and to a knowledge of the elements that establish value, I find that the before taking value of the subject property was $280,000, and that the after taking value is $175,000. Damages, therefore, are CT Page 4226 assessed at $105,000.
Judgment may enter for the plaintiff in the amount of $105,000, less $75,000 already paid, or an excess of $30,000, with interest at 10% per annum on such excess from the date of taking to the date of payment, together with costs and a reasonable appraisal fee of $4,490.
William C. Bieluch State Trial Referee