[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
REVISION OF STATEMENT OF COMPENSATION AND REPORT OF STATE TRIAL REFEREETO THE SUPERIOR COURT
Pursuant to General Statutes, Sec. 8-129, the Town of Newtown, acting by its Water Pollution Control Authority (WPCA), the contemnor, filed on November 10, 1994 with this court, a statement of compensation which may be summarized as for lows:
The governing body of Newtown for the purpose of acquiring, constructing and operating a municipal sewerage system, is the Water Pollution Control Authority. On September 27, 1994, the WPCA voted to acquire a permanent sewer easement, right of way and temporary construction easement, for the construction of a municipal sewerage system, over property of the defendants. The property involved is on Currituck Road in Newtown and is owned by the first two named defendants. The last two named defendants are the parents of Mr. David K. Nanavaty and are the holders of the first mortgage on the premises. The easement taken lies along the northwesterly boundary of the Nanavaty property and is 15 feet wide with an additional 5 feet of width on land of the neighboring Holzer land. A 5 foot temporary construction easement lies on each side of the permanent easement. The permanent easement taken from Nanavaty contains 4,438 ± square feet and the temporary construction easement contains 1.565 ± square feet. The permanent easement runs 285 feet on one side and 286 feet on the other from the stone wall at Currituck Road to the rear of the Nanavaty property. The easements are shown on plaintiff's Exhibit A taking map.
On December 12, 1994, the four defendants filed an appeal and application for review of statement of compensation, and the case was referred to the undersigned State Trial Referee for hearing and report under General Statutes, Sec. 8-132.
A hearing was held on June 6, 1995. This was continued until June 23, 1995 for further hearing and a view of the property. A further hearing was held on September 15, 1995, with a further view on that day.
On January 11, 1995, the clerk of this court filed a certificate of taking reporting that the WPCA filed with the clerk of the court a statement of compensation for the taking and CT Page 11810 deposited with the clerk the sum of $900 as compensation for the taking. The clerk certified that title then vested in the WPCA, with the right to enter upon the property taken.
The court offered to recuse itself because his family home has been subject to a municipal sewer easement across the entire rear of the property since 1976, but both counsel waived such a disqualification.
It should also be noted that the defendant, David K. Nanavaty, is a member of the Bar and Assistant Public Defender of the G.A. court in Ansonia. He was thus subject not only to the sworn duty to tell the truth as an officer of the court, as all attorneys are, but also specifically as an official in the criminal justice system, he was under an enhanced obligation of candor and forthrightness with the court. David K. Nanavaty (hereafter called Nanavaty) fully and honorably lived up to the standards required of him and was at all times completely candid and honest with the court in his claims, testimony and answers to the court's questions.
Nanavaty half-heartedly claimed off and on through the trial that jurisdiction was lacking since Newtown did not make a bonafide effort to settle the controversy. He did not raise a special defense to this effect, or file a motion to dismiss for lack of subject matter jurisdiction, so that the issue was not properly before the court. It should be stated, however, that the court found that the Town of Newtown and its officials and agents, the WPCA and its officials and agents, and all those connected with the taking acted commendably in the performance of their duties.
The evidence disclosed the following: Nanavaty and his wife bought the residential property where they live, 28 Currituck Road, on July 5, 1994 for $250,000 from his parents. This was the fair market value of the property at the time. Defendants' Exhibit A to J are photos of the property before the taking and construction and defendants' Exhibit 3 A to T show the property after the construction, which began February 2, 1995. Thereafter, up to the viewing on June 23rd, no restoration work was done.
Therein lies the key to this case. At the time of the first hearing and the first viewing shortly thereafter, Nanavaty was very distressed. A large stand of trees in the rear of his property had been eliminated and not yet restored. There was a CT Page 11811 large pile of gravel on part of his premises, another large area of gravel and stumps, and an unsightly unfilled hole in his land with a tree stump in it. Twenty (20) feet of the fence was down and his child's play area disturbed. The stone wall was breached. His rear property marker was gone. The while area then looked somewhat as if it had been hit by a typhoon or hurricane as one sees on T.V. His family nest had been invaded and his valued privacy impaired.
Thus, the testimony in June, valuable as it was, was to become mostly academic as a result of the restoration of the property in September. Yet, the earlier testimony should be summarized. Nanavaty spent $600 having the survey marker reset. This is approved as an item to be recovered in the revised statement of compensation. David Haynor, a qualified arborist from New York State, gave detailed and credible expert testimony about the loss of seven trees. He had examined the area before construction began. Replacing them with reasonably equivalent trees of less size in general justifies his value of the trees taken down as $2,476.
The plaintiff's appraiser, Peter Pisaretz, qualified as an expert witness. He has been doing appraisals since 1966. He did a before and after evaluation of the property to ascertain the damages. Much of his testimony and written appraisal report (plaintiff's exhibit 9) involved items no longer pertinent, since restoration has been accomplished.
The appraisal is detailed, comprehensive, and done in a very professional manner. Unfortunately, it is built on a foundation of sand. For in using a market data approach, he found the value before the taking to be $275,000. This flies directly in the face of Nanavaty's statement that they paid $250,000, full market value, per an appraisal, for the property in July, 1994. What better "before" value could be obtained than the market value price paid by the owner? The use of the higher figure leads the court to place little or no credibility in his appraisal. Even Mr. Nanavaty backed away from his own appraiser when the court asked him if he would sell for Mr. Pisaretz' valuations. Mr. Pisaretz found the before value to be $275,000 and the after value to be $238,500 with damages being $36,500, or $27,500 if proper restoration was made.
His analysis follows: CT Page 11812
MARKET DATA APPROACH (CONTIN'D)
 The sales that were considered in the `Before' valuation will be utilized in the `After' evaluation along with those factors that have an affect on the subject property to the `Taking.'
Those factors will have an affect on the subject as follows:
 1. Loss of full use of easement area 2. Loss of privacy 3. Loss of wildlife habitat 4. Loss of chain link fence 5. Loss of split rail fence 6. Loss of FULL `Bundle of Rights' 7. Loss of stone wall
 A prudent well informed buyer would utilize these factors in making the seller an offer for the property. The buyer now has a `Club' or bargaining tool that was not there `Before the Taking.'
 The ideal scenario in estimating the value of the subject `After the Taking' would be to have several sales that had taken place just prior to having all factors that are affecting subject present and then having these properties sell. Sales such as these have not taken place and an estimate of the subject property will be based upon the effect of the preceding factors. The total effect is estimated to be a minus 10% to the `Before Taking Value' or minus $27,500 plus the depreciated value of the stone wall, split rail fence and trees of $8,835 or a total of minus $36,335 from the `Before Taking Value' leaving an `After Taking Value' of $238,665. [Rounded out at $238,500.]
(Plaintiff's exhibit 9, p. 62.)
1. Loss of full use of easement area. This claim is without merit. The easement is on the boundary line of the Nanavaty property, well within the 25 foot setback zoning regulation so that nothing could be built in that area anyway. The Nanavatys have just as much use of the grassy area of the easement as before, subject to the WPCA's rights.
2. Loss of privacy. This also is Puffing. Comment will be made below about Mr. Pisaretz' fanciful claim of sewer inspectors disturbing the owners' privacy. There is a minimum loss of privacy in the rear where the stand of trees was taken down but this was more than compensated for by the planting of beautiful CT Page 11813 ornamental trees in the front of the side yard involved.
3. Loss of wildlife habitat. Only the animals could complain. See item above for equalizing restoration work.
4. Loss of chain fence. Restored.
5. Loss of split rail fence. Restored.
6. Loss of full "Bundle of Rights." This is just another way of saying that there is now an easement over the property.
7. Loss of stone wall. Restored.
It should be noted that Mr. Pisaretz' valuation of losses before the restoration is entirely reasonable, since when he made the appraisal it could not be known how well restoration would be done, if at all. Thus, Mr. Pisaretz' figures of the overall damages comes to $27,500, a figure which he gets by applying an overall 10 percent reduction in value of the property. No authority or treatise was cited by him. Mr. Pisaretz is a reputable appraiser and entitled to his expert opinion. But the court concluded that there is no basis whatsoever for a claim that this 20 foot deep sewer, once the area is restored, has a very substantial effect on the overall subject property.
Brief mention must be made of Mr. Pisaretz' principal contention. He claims that a potential buyer would be buying a piece of property that has a cloud on the title (Tr. 104, 105). A buyer might not buy the property because he would have people coming on to the property to the sewer or the manhole to make sure that everything is there. This is speculative thinking, divorced from reality. There is, of course, the legal right of the WPCA to come onto the property and make repairs, etc. But, as a practical matter, the owners of 28 Currituck Road will hardly know the easement is there. Mr. Pisaretz' most tenuous claim is, "If you have a wife that is a sun worshipper, if she sat in the back yard where she thinks she has all the privacy in the world and then suddenly someone appears, there's no privacy in your yard." Mr. Pisaretz also claimed that there will be a danger that children at play might fall in the manhole. The court does not contemplate that Newtown will develop a corps of sewer police.
Mr. Pisaretz' far out claims of the hazards of the sewer line to the land owners were brought down to earth by the testimony of CT Page 11814 Fred Hawley (Tr. p. 48), the public works director of Newtown. He oversees and manages highways, sewer projects, solid waste and other matters. He has a strong background in the field, coming from the New York/New Jersey port authority where he did planning and engineering for tunnels, bridges and terminals. He is not an engineer with a degree. His role concerning the Newtown sewer project is to oversee all of the construction as well as financial processing of reports. He also must verify that everything from the piping to the restoration is properly completed. (Tr., p. 54.) There are probably a dozen or more properties that will be impacted like the Nanavaty place. (Tr., p. 55.) They have no plans to have sewer inspectors on people's property now or in the future. Most of the inspection will be done off-site because they will use remote cameras to go down pipelines to inspect them. This can be done from the road because they can go 300 or 400 feet down a line. People would not be going on the owners' property except in the event of a failure which they don't anticipate.
The manholes have a special locked cover which can only be accessed by special tools. The only things not allowed on the easement are structures and trees. The Town has planted shrubbery on easements for some owners. Mr. Hurley has overseen a number of sewer projects over the last ten or fifteen years. In his experience, you would never have to go in and dig down or repair a sewer unless some digging interrupted the line.
Of course, his statement about what is and is not allowed on the easement are not contained in the easement. Nevertheless, the usage he describes represents the reasonable and necessary usage that would be expected to apply to such an easement. The court credits and accepts Mr. Hurley's summary of the planned usage of the easement. From this it is clear that the effect in the overall valve of the Nanavaty property is very slight indeed.
A cautioning note to the citizenry of Newtown. Great care must be exercised to distinguish a sewer easement from a gas pipeline easement. Remote as it may be, gas pipelines have exploded. The court takes judicial notice of the horrendous gas pipeline explosion in New Jersey several years ago. Such pipelines are inspected regularly. Uninformed pipeline employees are not infrequently spotted checking the equipment and general situations where such pipelines cross the highway. The Algonquin pipeline on Kohanza Street, that this judge has crossed thousands of times in the past forty plus years, has recently had a new CT Page 11815 coat of yellow paint on the metal vents on each side of the road and striking yellow warning markings on the highway. Any real or publicly conceived fear of a gas pipeline is not involved in a sewer line taking case.
WPCA's appraiser, Ronald S. Struski, is also an experienced appraiser and he was qualified as an expert witness. His report (plaintiff's exhibit B) explains the approach he took as follows:
 The purpose of this appraisal is to provide you, as legal counsel for the Town of Newtown, an estimate of market value of the property on a `Land Only' basis and involves the acquisition of a permanent sanitary sewer easement area of 4,435 square feet and a temporary construction easement area of 1,565 square feet along the northern side boundary of the site. The Direct Damage Approach is applied by estimating the overall value of the site. The direct proportionate share of the land taken is then determined. The property presently contains a one-family dwelling, however, as there are no apparent adverse effects on the improvements attributable to the proposed easement, it has not been included in the valuation process.
(Plaintiff's exhibit B, p. 1.) He found the damages on this basis to be $900.
He stated in his report that since the dwelling is not affected, his approval involves the valuation of the subject on a land only basis, before the taking. Upon formulating the market value of the entire subject parcel, a direct proportionate share was applied to the taking area. To ascertain the overall value of the entire parcel, he used the sales comparison approach. From this, he found $80,000 to be the value of the entire lot of 60,505 square feet or $1.32 a square foot. To value the taking, he allocated 15 percent of the per foot value concerning the permanent easement.
The court concludes that his estimate of damages is substantially correct, except that he is a little stingy.
 When, as in the present case, only a part of a tract of land is taken for the public use, `just compensation' includes recovery for the part taken and recovery for any damages visited upon the remainder which result from the taking. See, e.g., Meriden v. Highway Commissioner, 169 Conn. 655, 659, 363 A.2d 1094. In such a situation, damages are measured by determining the difference between the market value of the whole tract as it lay prior to the CT Page 11816 taking and the market value of what remained thereafter. Andrews v. Cox, 129 Conn. 475, 478, 29 A.2d 587; Lefebvre v. Cox, 129 Conn. 262, 265, 28 A.2d 5; see Meriden v. Highway Commissioner, supra. In determining the market value of a remainder after a partial taking, it is proper for the trier to consider all elements which are a natural and proximate result of the taking and which could legitimately affect the price a prospect purchaser would pay for the land. Budney v. Ives, 156 Conn. 83, 88, 239 A.2d 482; Holley v. Torrington, 63 Conn. 426, 433, 28 A. 613. `[A]ny expenses which are reasonably necessary to adapt the remaining land to use in view of changes to be made in the land taken may properly enter into the damages to be awarded . . . . The more accurate statement is, however, that such expenses are not recoverable as such but are evidence of elements in the decrease of market value, of which they may be an accurate measure.' Andrews v. Cox, 127 Conn. 455, 459-60, 17 A.2d 507; see DelVecchio v. New Haven Redevelopment Agency, 147 Conn. 362, 161 A.2d 190.
Bowen v. Ives, 171 Conn. 231, 236-237 (1976).
On September 15, 1995, the court, accompanied once again by counsel, and with a representative of the contractor in tow, once again viewed the property. In one word, the restoration work was beautifully done. The lawn, despite the drought, has come along well. Handsome ornamental trees now placed in the lawn area nearest the road. The stone wall, fence, play area and all other disturbed areas are properly put in their original condition.
In final argument, Mr. Nanavaty was true to his colors. The court stated that it would put little or no evidence in his appraiser's report. Being a skilled advocate, he "rode with the punches" and made no further mention of his appraiser's figures. With his usual frankness, he said that the restoration work was okay and that the contractor and landscaping people were very cooperative. He volunteered that his arborist felt that the list of replacement trees was appropriate. The court then asked him what he really thought he was entitled to. He stated $17,500 computed as follows:
1. $600.00 for surveyor
2. 9,600.00 damages for the benefit assessment he expects to be charged
3. 2,500.00 hook up charge for sewer CT Page 11817
4. 2,700.00 preparation of appraisals
5. 1,900.00 testimony of appraiser
6. 440.00 report and testimony of his arborist ---------- $17,740.00
Little time is required to boil down his estimate:
(1) allowed as an element of damages;
 (2) by no stretch of the imagination is he to be awarded damages for the benefit he is assessed. That is looking a gift sewer in the mouth;
(3) see (2) above;
(4) an exorbitant price for the appraisal — $800 allowed;
(5) see (4) above — $800 allowed; and,
(6) allowed.
The court concludes that a revised statement of compensation should be allowed as follows:
 (1) recovery for the permanent easement $1,200.00
 (2) recovery for the damages visited upon the remainder which resulted from the taking 1,000.00
 (3) recovery of cost of surveying work 600.00 ------ Total damages $2,800.00
Plus interest at the legal rate from date of taking, January 11, 1995. Expert fees are allowed as follows:
Peter Pisaretz' appraisal reports $800.00
Peter Pisaretz' testimony 800.00 CT Page 11818
 David Hayner, arborist, report and testimony 440.00 ------ $2,040.00 T. Clark Hull State Trial Referee