[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an appeal by Vanlose Enterprises from the assessment of damages in the amount of $28,900 paid by the defendant for the partial taking by eminent domain on December 6, 1995, of its property on the westerly side of and known as No. 80 Oakland Street, State Highway Route 83, in the Town of Manchester, pursuant to General Statutes Section 13a-73(b), for the layout, alteration, extension, widening, change of grade, drainage and improvement of Route 83.
Said premises taken are more particularly bounded and described as follows: Easterly by Oakland Street, Route 83, 302.99 feet, more or less; Southerly by land now or formerly of the Town of Manchester, 15 feet, more or less; Northwesterly and Westerly by the owner's remaining land, 302 feet, more or less, being the line designated as "Taking Line" on the map hereinafter referred to, and running Northerly to a point.
Said parcel contains 2,673 square feet, more or less, together with all appurtenances thereon, all of which more particularly appears on a map entitled: "TOWN OF MANCHESTER MAP SHOWING LAND ACQUIRED FROM VANLOSE ENTERPRISES, L.L.C., BY THE STATE OF CONNECTICUT, INTERSECTION IMPROVEMENTS OAKLAND ST. (RTE 83) NORTH MAIN ST. (RTE 83) SCALE 1" = 20" JANUARY 1995, TOWN OF MANCHESTER, DEPARTMENT OF PUBLIC WORKS ENGINEERING DIVISION". 76-176-3 Rev. 6-29-95.
Said taking also included the rights to grade, install pavement markings, and relocate light accessory structures. These additional rights, however, were of a temporary nature and terminated automatically upon completion of work by the State.
The plaintiff's property is located about 1.5 miles north of the town center. On October 24, 1994, the owner of the premises obtained a zoning variance to allow parking in conjunction with an abutting car dealership located thereon. A condition of this variance required that "landscape planters be reinstalled on the existing dealership as a buffer along Oakland Street." CT Page 13497 Subsequently, the zoning authorities agreed to accept a four foot wide border along Oakland Street in satisfaction of the buffer requirement, and the plaintiff had in fact installed the landscaped border prior to the taking.
The property is located on heavily traveled Route 83 at the corner of Oakland and North Main Streets. Route 83 is a connector of Interstate Highways I-384 and I-84. The neighborhood is commercial, comprising of local businesses. Its arterial roads access residential neighborhoods. The land's topography is level and above the road grade. The parcel has a total of 420 feet of frontage along Route 83, and 150 feet of frontage on a side street known as Edward Street.
Improvements on the property consist of a one-story building on the northerly portion of the land, which is totally utilized as an automobile dealership. The showroom faces Oakland Street. The service garage is in the rear of the building with large garage doors on both sides of the building. The portion of the lot south of the building is paved and utilized completely for the parking, storage and display of new and used vehicles.
The building was not adversely affected by the taking. All public utilities are available and were unaffected by the condemnation proceedings. Land improvements in the taking area, however, were affected and resulted in nonconformance with the zoning regulations. More importantly the taking resulted in a reduction of the parking area essential for the parking, storage and display of vehicles, the sale of which is the life blood of a car dealership. There is no land available on the premises remaining after the taking for the replacement of the lost parking spaces.
Both parties are in agreement, and the court so finds, that the highest and best use of the subject property is the continuation of its present use as an automobile dealership.
The plaintiff's appraiser utilized the market sales approach to estimate the fair market value of the land before the taking. Using three local comparable sales, he found the value of the land to be $3.70 per square foot, or $296,555 for the entire area of 80,150 square feet. The cost approach was adopted for the valuation of the site improvements as follows: amesite — 206 spaces @ $675, or $139,050, less 25% depreciation = $104,288; 18 light poles and lights @ $2,000 = $36,000; landscaping @ CT Page 13498 $10,000; total land and site improvements before taking = $446,800, rounded.
In estimating the value of the land remaining after the taking, 77,477 square feet, the plaintiff's appraiser found severance damage of 15%, reducing the unit value to $3.15 for a total of $244,053. The number of parking spaces was reduced by the taking, to 190, thereby decreasing the amesite cost to $96,188. The lighting cost remained the same as before. In this manner he estimated the value of the land and improvements to total $376,200 rounded, calculating the damages to be $70,600.
The defendant's appraiser utilized the methodology employed by the plaintiff. Coincidentally, two of his comparable sales were those analyzed by the plaintiff's appraiser. His valuation, however, was $7.00 per square foot for a total land value before the taking of $583,700. Added to this was the depreciated value of the paving within the take area of $2,000, and the contributory value of the landscaping within that area of $500. With these calculations, he estimated the value of the land before the taking to be $586,200.
It was the conclusion of the defendant's appraiser that in the after taking situation the dealership will be able to show its outdoor inventory in the same manner as before the taking. The seven rows of vehicles running north and south can be rolled back to the west a distance equal to the depth of the taking. This would result in the loss of 13 spaces to the rear of the lot. However, by paving the landscaped area to the rear, eight spaces can be recaptured. The remaining five spaces can be found in other areas by rearrangement of the vehicles. The cost-to-cure the reduced parking was estimated to be $12,000. This amount, deducted from the after value of the land of $565,000, resulted in his total estimate after taking of $553,000. Damages, therefore, were found to total $33,200.
A judge trial referee sitting as a court on appeals in condemnation cases is more than just a trier of fact or an arbitrator of differing opinions of witnesses. He is charged by the General Statutes and the decisions of our courts with the duty of making an independent determination of value and fair compensation in the light of all circumstances, the evidence, his general knowledge and his viewing of the premises. Minicucciv. Commissioner of Transportation, 211 Conn. 383, 388 (1989);Birnbaum v. Ives, 163 Conn. 12, 21-22 (1972); Feigenbaum v.CT Page 13499Waterbury, 20 Conn. App. 148, 153 (1989). It is his task to reach a result that gives the plaintiff, as nearly as possible, a fair equivalent in money as just compensation for the property taken. Mathis v. Redevelopment Agency, 165 Conn. 622, 623 (1973);Feigenbaun v. Waterbury, supra, 153-54.
"When only a part of a tract is taken for the public use, `just compensation' includes recovery for the part taken and recovery for any damages visited upon the remainder which result from the taking. Bowen v. Ives, 171 Conn. 231, 238,368 A.2d 82; Meriden v. Highway Commissioner, 169 Conn. 655, 659,363 A.2d 1094. `The ordinary rule for measuring damages where a portion of a tract of land is taken is to determine the difference between the market value of the whole tract as it lay before the taking and the market value of what remained of it thereafter, taking into consideration the changes contemplated in the improvement and those which are so possible of occurrence in the future that they may reasonably be held to affect market value.' Lefebrve v. Cox, 129 Conn. 262, 265, 28 A.2d 5 [1942]. The court should consider any and all damages which will foreseeably follow from the proper consideration of the project, including any damage to the remainder which is a necessary, natural and proximate result of the taking. Budney v. Ives,156 Conn. 83, 88, 239 A.2d 842." D'Addario v. Commissioner ofTransportation, 172 Conn. 182, 182-85, 374 A.2d 163 (1976);Darling v. Waterford, 7 Conn. App. 485, 486 (1986).
The elements of the plaintiff's damage due to the taking of December 6, 1995, are : (1) loss of fee to about 2,673 square feet of land "fronting" on Oakland Street, a state highway designated as Route 83; (2) loss of 16 spaces, approximately eight (8) percent, for the storage, display and parking of vehicles, the stock-in-trade necessary to the operation of an automobile dealership; and (3) causation of non-conformance of the vehicle storage, display and parking spaces to the zoning regulations pertaining to separation of vehicle parking from the public right-of-way known as Oakland Street or State Highway Route 83.
After viewing the site of the subject property, and after giving due consideration to the opinions of expert witnesses and to a knowledge of the elements that establish value, I find that the before taking value of the subject property was $586,700, and that the after taking value is $529,700. Damages, therefore are assessed at $57,000. CT Page 13500
Judgment may enter for the plaintiff in the amount of $57,000, less $28,900 already paid to the plaintiff, or an excess of $28,100, with interest at 8% per annum on such excess from the date of taking to the date of payment, together with costs and a reasonable appraisal fee of $1,000.
William C. Bieluch Judge Trial Referee