EUGENE V. BOWEN ET AL. *v.* HOWARD S. IVES,
HIGHWAY COMMISSIONER

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and BARBER, Js.

Argued April 13—decision released June 22, 1976

*Clement J. Kichuk,* assistant attorney general, with whom, on the brief, was *Carl R. Ajello,* attorney general, for the appellant (defendant).

*Paul E. Pollock,* with whom, on the brief, was *James L. Galluzzo,* for the appellees (plaintiffs).

BOGDANSKI, J.   The defendant highway commissioner condemned a portion of the plaintiffs' property located in Bridgeport and assessed damages at $6600.   Claiming that the award was inadequate, the plaintiffs appealed to the Superior Court where the matter was referred to a state referee, who, exercising the powers of the Superior Court, fixed the damages for the taking at $21,240.   From the judgment rendered the defendant has appealed to this court, assigning error in the court's finding of facts without evidence, in the refusal to find material facts claimed to be admitted or undisputed, in the admission of certain evidence, in the overruling of claims of law, and in the conclusions reached.

The salient facts may be summarized as follows: In 1969, the plaintiffs owned residential property located at the southeast corner of the intersection of East Main Street and Broadbridge Road in Bridgeport.   The lot was approximately 12,500 square feet in size and had upon it an attractive two-story brick house with a built-in two-car garage.

The house faced west on East Main Street and was set back therefrom a distance of forty-five feet. It stood eight feet above street grade and had a commanding view of Beardsley Park across the street. Along the driveway and along the East Main Street frontage was a granite retaining wall.

On March 28, 1969, in connection with the relocation of routes 25 and 8, the defendant condemned 2178 square feet of the plaintiffs' East Main Street frontage, varying in depth from seventeen to twenty-five feet. Most of the retaining wall was located in that area. The setback of the house was reduced to twenty-five feet. Also taken was an easement to slope an area of ninety-six square feet on the easterly side of the northerly end of the taking line in order to provide a site-line down East Main Street from Broadbridge Road.

The first hearing on the appeal was held on October 16, 1969. The plaintiffs presented testimony that prior to the taking their property had a value of $47,600; that after the taking it had a value of $36,900; and that, therefore, by application of the "before and after rule," the damages totaled $10,700. The defendant offered evidence that the "before" value of the property was $31,200 and that the "after" value was $24,600, resulting in damages of $6600. At that time, no construction work had yet been started in the area and, consequently, the court was unable to visualize the effect the partial taking would have on the plaintiffs' remaining land. The case was therefore continued until after completion of the project.

A second hearing was held on September 17, 1973, at which the plaintiff Eugene Bowen testified to various expenses which he had incurred or would

incur in the future as a result of the partial taking. Those expenses related to the construction of a driveway, sidewalk, and retaining wall, the painting and cleaning of portions of the house, and the removal of trees and shrubs.

During the four years between hearings, the court viewed the construction work in progress on several occasions. On the day of the second hearing, and in the company of all counsel, the court again viewed the premises. The memorandum of decision reveals that on June 3, 1974, prior to rendering judgment, the court viewed the property once more. The memorandum of decision also states that the results of the construction were disastrous, and that the transformation of the plaintiffs' property could not have been worse. During construction, the plaintiffs' lawn was covered with debris and dust. Grass grew wild and could not be mowed by the plaintiffs owing to increased steepness in the slope. East Main Street had been widened, traffic lights had been installed at the intersection, and the traffic on both Broadbridge Road and East Main Street had increased significantly. The plaintiffs found it necessary to replace a lamppost, reseed and reloam their lawn, repaint portions of the house and remove dust which had infiltrated the dwelling and had impaired its habitability.[1]

[1] The defendant asserts that the facts contained in the finding relating to the installation of traffic lights, the widening of the traveled portions of both streets, the increase in traffic, the steepness of the slope and the general appearance of the plaintiffs' land after completion of construction activities were found without evidence presented at trial. He argues that those portions of the finding cannot be properly relied upon to support the court's conclusions.

It is clear from the finding that the court found those facts on the basis of its views of the premises. "We have consistently held that the visual observations made by the trier on a visit to the property are as much evidence as the evidence presented for his con-

The court concluded that in determining a fair price for the property remaining after the taking, a prospective purchaser would consider all of the elements which would legitimately affect its value, including the loss of trees and shrubs, the elimination of the granite retaining wall, the creation of a slope on the East Main Street frontage which is too steep to mow, the need to replace the lamppost, the need to reseed and reloam the lawn, and the need to repaint portions of the exterior and remove dust from the interior of the house. He found the market value of the property before the taking to

sideration by the witnesses under oath. They are in fact supplemental evidence." *Birnbaum* v. *Ives*, 163 Conn. 12, 20, 301 A.2d 262, quoting from *Houston* v. *Highway Commissioner*, 152 Conn. 557, 558, 210 A.2d 176. Accordingly, we do not disturb the portion of the finding attacked above.

One additional section of the finding has been attacked as being found without evidence. It reads: "The segment of Route 8 from Lindley Street in Bridgeport to Huntington Turnpike, just south of the Trumbull line to provide access to existing Route 8, was officially opened to traffic by the defendant in the fall of 1973 with much publicity in the press and participation by state and local officials." It does not appear that those facts were found on the basis of the court's view of the premises. The plaintiffs have presented no evidence in an appendix upon which the trier could have found them. Consequently, that portion of the finding has been stricken. See *Lathrop* v. *Planning & Zoning Commission*, 164 Conn. 215, 217–18, 319 A.2d 376; *Curtin* v. *Franchetti*, 156 Conn. 387, 391, 242 A.2d 725.

The defendant also asserts that the court erred in refusing to find the facts contained in nineteen paragraphs of his draft finding, the existence of which facts, he claims, was undisputed. One of the "facts" sought to be added is in reality a conclusion which the trier did not draw. Several of the facts sought to be added have already been included in the finding. The remainder of the additions sought merely repeat the testimony of expert witnesses, and the inclusion of that testimony in the finding would not affect the conclusions reached by the court nor would it benefit the defendant in presenting the questions of law which he desires to have reviewed by this court. See *Hyatt* v. *Zoning Board of Appeals*, 163 Conn. 379, 381, 311 A.2d 77; *State* v. *Carnegie*, 158 Conn. 264, 266, 259 A.2d 628, cert. denied, 396 U.S. 992, 90 S. Ct. 488, 24 L. Ed. 2d 455.

be $45,840, its market value just after the taking to be $24,600, and a proper assessment of damages, therefore, to be $21,240.

The defendant's initial claim is that the plaintiff Eugene V. Bowen's testimony concerning expenses incurred as a result of the taking was inadmissible because it had no bearing on the damages recoverable, and that the court's consideration of that testimony resulted in its duplicating compensation for several items of damage.

When, as in the present case, only a part of a tract of land is taken for the public use, "just compensation" includes recovery for the part taken and recovery for any damages visited upon the remainder which result from the taking. See, e.g., *Meriden* v. *Highway Commissioner*, 169 Conn. 655, 659, 363 A.2d 1094. In such a situation, damages are measured by determining the difference between the market value of the whole tract as it lay prior to the taking and the market value of what remained thereafter. *Andrews* v. *Cox*, 129 Conn. 475, 478, 29 A.2d 587; *Lefebvre* v. *Cox*, 129 Conn. 262, 265, 28 A.2d 5; see *Meriden* v. *Highway Commissioner*, supra. In determining the market value of a remainder after a partial taking, it is proper for the trier to consider all elements which are a natural and proximate result of the taking and which could legitimately affect the price a prospective purchaser would pay for the land. *Budney* v. *Ives*, 156 Conn. 83, 88, 239 A.2d 482; *Holley* v. *Torrington*, 63 Conn. 426, 433, 28 A. 613. "[A]ny expenses which are reasonably necessary to adapt the remaining land to use in view of changes to be made in the land taken may properly enter into the damages to be awarded. . . . The more accurate

statement is, however, that such expenses are not recoverable as such but are evidence of elements in the decrease of market value, of which they may be an accurate measure." *Andrews* v. *Cox,* 127 Conn. 455, 459-60, 17 A.2d 507; see *DelVecchio* v. *New Haven Redevelopment Agency,* 147 Conn. 362, 161 A.2d 190.

In the present case, Bowen's testimony tended to show a decrease in the market value of the remainder of the subject property which was attributable to the taking. While the costs to correct the specific injuries to the property may not have been equivalent to the amount by which the market value of the property was thereby decreased, those costs would legitimately affect the price a prospective purchaser would pay for the land. The evidence of those costs, therefore, was relevant in determining the extent of any decrease in market value. The court did not err in admitting that testimony.

Moreover, the defendant's assertion that the court awarded "double damages," by treating the expenses testified to as separate items of damage in addition to considering the potential effect that the necessity of those expenses would have on a prospective purchaser of the property at the time of the taking, is not supported by the finding. It is expressly stated in the finding that the injuries to the plaintiffs' property were considered by the court only insofar as they affected the market value of the property after the taking.

The defendant next claims that the court erred in giving effect to certain improper considerations in fixing damages for the taking. He argues that any discomfort to the owners or damage to the property resulting from construction activity were not

of a permanent nature, did not spring from the taking, and thus were not compensable. He further claims that the increase in traffic along Broadbridge Road and East Main Street should not have entered into the determination of damages since that element did not exist on the date of the taking.

When determining the market value of land after a partial taking, the use made or to be made of the land taken is to be considered with regard to its effect upon the market value of the remaining land. *Andrews* v. *Cox,* 129 Conn. 475, 478, 29 A.2d 587; *Andrews* v. *Cox,* 127 Conn. 455, 458, 17 A.2d 507. The damages are determined as of the time of the taking, but they may include those damages which will result in the future from the use of the land taken. *Andrews* v. *Cox,* 127 Conn. 455, 459, 17 A.2d 507. "The different elements of damage to remaining land recoverable . . . are as numerous as the possible forms of injury. The mere fact that injuries will be temporary and incident to the period of construction only is no ground for disallowing recovery, since a purchaser might pay less if he knew such injuries were to be inflicted." 4A Nichols, Eminent Domain (3d Ed.) § 14.24, p. 14-128.2; see *Andrews* v. *Cox,* 127 Conn. 455, 17 A.2d 507.

Each of the elements of damage to the remaining land which the court considered in the present case may be reasonably said to have affected its market value just after the taking. If, on the date of the taking, a prospective purchaser had known that for several years the property would be covered with debris, that he would suffer discomfort, and that traffic in front of the home would increase, it is reasonable to believe that the price he would pay for the property would be affected. In deter-

mining the extent of future damage, the court in this case was not required to speculate as to the uses to be made of the land or the injuries resulting therefrom. The court had the benefit of hindsight, and it properly considered the state of facts which existed during the project and at its completion. See, e.g., *Northeast Missouri Electric Power Cooperative* v. *Cary,* 485 S.W.2d 862 (Mo. App.).

The defendant's final claim is that the court's award of damages cannot stand because it is in excess of the amount of damages testified to by the plaintiffs' expert appraiser. In Connecticut, we have never held that an award of damages in a condemnation proceeding must be within the perimeter established by expert testimony. To the contrary, "[t]he purpose of offering in evidence the opinions of experts as to the value of land is to aid the trier to arrive at his own conclusion, which is to be reached by weighing those opinions in the light of all the circumstances in evidence bearing upon value and his own general knowledge of the elements going to establish it." *Birnbaum* v. *Ives,* 163 Conn. 12, 20, 301 A.2d 262, quoting from *Bennett* v. *New Haven Redevelopment Agency,* 148 Conn. 513, 516, 172 A.2d 612; see *Appeal of Cohen,* 117 Conn. 75, 85, 166 A. 747. In a condemnation case, the referee is more than a trier of facts or an arbiter of differing opinions of witnesses. "He is charged by the General Statutes and the decisions of this court with the duty of making an independent determination of value and fair compensation in the light of all the circumstances, the evidence, his general knowledge and his viewing of the premises." *Birnbaum* v. *Ives,* supra, 21.

Here, the plaintiffs' expert's opinion of the "after" value was given at the first hearing, a time when

the referee was unable to determine the effect the taking would have on the remaining land. By the time the project was completed, more damage than was contemplated in the expert's opinion had, in fact, occurred. The court's view of the premises revealed that the damage to the property was greater than originally anticipated. We conclude that the court could have logically and reasonably reached the conclusion which it did in fixing the sum of $21,240 as "just compensation" for the property taken. Id., 23.

There is no error.

In this opinion the other judges concurred.