CORBIN DEVELOPMENT COMPANY, INC. *v.* COMMISSIONER OF TRANSPORTATION, STATE OF CONNECTICUT

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and PETERS, Js.

Argued June 7—decision released August 29, 1978

*Robert Y. Pelgrift,* assistant attorney general, with whom, on the brief, was *Carl R. Ajello,* attorney general, for the appellant (defendant).

*Benson A. Snaider,* for the appellee (plaintiff).

LOISELLE, J. The defendant has appealed from a judgment of the Superior Court in Fairfield County reassessing the damages sustained by the plaintiff when its property was taken by the defendant through eminent domain.

The plaintiff was the owner of 7.95 acres of land fronting on Old Kings Highway South and Tokeneke Road (hereinafter route 136) in Darien. On December 27, 1974, the defendant commissioner condemned and took, for the relocation and improvement of route 136, 1.28 acres of unimproved land fronting on route 136 together with certain easements and the denial of access to route 136 along that portion of the plaintiff's property east of the Goodwives River. Damages were assessed at $245,000.

On December 26, 1974, the day prior to the taking, the defendant filed with the planning and zoning commission of Darien construction plans for the relocation of route 136 as it affected the plaintiff's property. Except for minor refinements these became the final plans. The construction drawings show a five-foot-high chain link fence three feet within the taking line, running a length of four hundred feet, eighty of which cross the intervening property owned by another. A metal "I" beam rail is also shown, running between the plaintiff's remaining property and route 136, for a length of two hundred and ten feet. This rail overlaps the chain link fence for approximately forty feet.

The chain link fence is to be installed at the top of a slope which will be created when the defendant lowers the grade of route 136 to allow him to tunnel underneath railroad tracks located on the opposite side of route 136. The grade of the road fronting on the plaintiff's remaining property will be lowered so that a portion of the new road will be one foot lower than the old road and about two feet lower than the plaintiff's remaining property. As the new road proceeds to the east, the cut will become progressively deeper and the banks of the remainder higher until the cut at one point will be almost thirteen feet below the existing grade at the center line of the new road, while the bank at the taking line will be over twenty-one feet higher than the grade at the new center line. The purpose of the proposed chain link fence is to protect persons, animals and objects from falling from the ridge which these cuts produce into the highway below and, at the same time, to protect traffic on the highway from falling objects. The metal beam guardrail is designed to protect persons and vehicles from the hazard of going off the relocated route 136 into the Goodwives River.

At the time of taking, the plaintiff's property was in a designed office and research zone and had unrestricted access to both roads upon which it fronted. Plans for a dinner theater and parking area, to be located upon 2.64 acres of the property lying west of the Goodwives River, were underway. The concept of this use was approved by the planning and zoning commission and on March 25, 1975, the zone was changed to permit dinner theaters as well as office buildings. At the trial, the parties stipulated that, on the date of taking, there was a reasonable probability of a zone change.

The proposed commercial use of the plaintiff's remaining property would make it a "major traffic generator" and, as such, access across the defendant's property to the relocated route 136 would be permitted only upon application to the state traffic commission, pursuant to § 14-311 of the General Statutes, and to the defendant, pursuant to § 13a-143a of the General Statutes. The plaintiff filed such an application with the state traffic commission on October 10, 1975. No action had been taken on the application at the time of trial, since the timetable for the construction of relocated route 136 had been delayed and no approval could be obtained until the construction had further progressed.

The referees, acting as a court, found that "[t]he combination of the chain link fence; the metal beam rail; the lowering in the grade of the roadway; and the creation of the embankment will effectively restrict access between the highway and the frontage of the plaintiff's remaining property west of the river, except for 280 feet at the westerly end of the property on Old King's Highway." Damages were reassessed and the defendant appealed.

The single issue raised by this appeal is whether the court erred in awarding substantial damages based in part upon its determination that the taking and concomitant construction would effectively restrict access between route 136 and the remaining portion of the plaintiff's property west of the river. Essentially, the defendant challenges the court's conclusion that an "effective" loss of access exists since, the defendant reasons, "the plaintiff can, and doubtless will, go on to secure approval of its application for a major traffic generator permit and state

assisted access, precisely as it planned for its dinner theater tenant." The defendant raises the specter of establishing a precedent which would require him to condemn and pay damages for a denial of access to abutting owners whenever guardrails or safety fences along state highways are proposed.

The defendant's argument fails to consider fully those reasons underlying the decision of the court. Both the memorandum of decision and the finding reveal that the reassessment of damages derived from consideration of numerous factors relevant to an assessment of value, including, in fact, the pending application for a driveway onto route 136. Although the finding refers to "the chain link fence" and "the metal beam rail" as factors restricting access, equal, if not greater, weight is given to "the lowering in the grade of the roadway; and the creation of the embankment." The record abundantly supports the contention that these are valid factors to consider in determining value. Indeed, the defendant's own appraiser noted that the taking would "significantly alter the quality of access available to the subject property by virtue of the cuts which render the remainder from approximately 6 feet to 21 feet above the grade of the new highway for a significant portion of the remainder frontage." A highway engineer, witness for the defendant, stated upon cross-examination that "you certainly couldn't climb that twenty-foot cut unless you had a special vehicle. A miracle vehicle."

When, through eminent domain, only a portion of a tract of land is taken, "just compensation" includes "recovery for any damages visited upon the remainder which result from the taking." *D'Addario* v. *Commissioner of Transportation*, 172 Conn. 182, 184, 374 A.2d 163 (1976); *Bowen* v. *Ives*,

171 Conn. 231, 238, 368 A.2d 82 (1976); *Meriden* v. *Highway Commissioner,* 169 Conn. 655, 659, 363 A.2d 1094 (1975). In such a case, the ordinary rule for measuring damages requires a determination of "the difference between the market value of the whole tract as it lay before the taking and the market value of what remained of it thereafter, taking into consideration the changes contemplated in the improvement and those which are so possible of occurrence in the future that they may reasonably be held to affect market value." *Lefebvre* v. *Cox,* 129 Conn. 262, 265, 28 A.2d 5 (1942); *Bowen* v. *Ives,* supra, 236. It is, therefore, proper to consider in assessing damages all of those elements which a well-informed purchaser would view as affecting the value of the property, including the use to be made of the land taken as it might affect the value of the land remaining. *Andrews* v. *Cox,* 127 Conn. 455, 458–59, 17 A.2d 507 (1941).

From the foregoing principles it is clear that the court acted properly in considering all of those factors, particularly the substantial change in grade, as protected by the fence and rail, which would serve to restrict access from the plaintiff's remaining property to the highway. There is no doubt that access is a factor affecting the value of property.

The defendant's assertion that an affirmation of the court's award will lead to future holdings that a loss of access per se results from the contemplated erection of fences and guardrails along a highway is unfounded, supported neither by the court's findings nor by the full record.

There is no error.

In this opinion the other judges concurred.