[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The Commissioner of Transportation ("Commissioner") has filed a Notice of Condemnation and Assessment of Damages pursuant to Connecticut General Statutes §§ 13a-73 (b) and 13a-98e. The purpose of the condemnation was to acquire an easement upon land on Grove Street in Stamford owned by Rafique Tai, being a full and perpetual easement to construct a sidewalk. The easement area consists of 214 square feet and extends along the entire Grove Street frontage of this corner property, for a distance of approximately 42.87 feet, and is approximately 5 linear feet in depth. The Commissioner's Notice assesses the damages for the condemnation at $6,350. February 11, 1999 was stipulated by the parties to be the taking day.
The owner of the property (hereinafter referred to as "owner" or "appellant"), claiming to be aggrieved by the Commissioner's action, has filed an application pursuant to C.G.S. § 13a-76 for the reassessment of the damages. The undersigned judge trial referee conducted a hearing in which testimony was given by the appraisers of each of the two parties, exhibits were received, and the court viewed the subject property in the company of both counsel.
The property is located on the easterly side of Grove Street and is known as 157 Grove Street. It contains a wood frame structure built in CT Page 17393 1892 of approximately 1850 square feet; the first floor of this two story building is used as professional office space,[1] and the second floor contains a four-room residential apartment. These improvements sit upon a corner lot, rectangular in shape, containing 4,902 square feet of land, more or less. The surrounding area is mixed use in nature containing residential, commercial and specialty property uses. Pursuant to C.G.S. § 13a-73, the land involved was taken "for the layout, alteration, extension, widening, change of grade, and improvement" of Grove Street, and therefore ". . . the owner of such land shall be paid by the state for all damages." C.G.S. § 13a-73 (b). "The single objective of [an eminent domain] proceeding is to ensure that a property owner shall receive, and that the State shall only be required to pay, the just compensation which the fundamental law promises the owner for property which the; State has seen fit to take for public use." Thomaston v.Ives, 156 Conn. 166, 174, 239 A.2d 515 (1968).
"When a portion of a tract of land is taken the rule for estimating the damages to which the owner is entitled, in the absence of unusual circumstances, is thoroughly settled; it is the difference between the market value of the whole tract as it lay before the taking, and the market value of what remains of it thereafter and after the completion of the public improvement." (Citation omitted; internal quotation marks omitted) Andrews v. Cox, 127 Conn. 455, 457, 17 A.2d 507 (1941). In determining the market value of a remainder after a partial taking, it is proper for the trier to consider all elements which are a natural and proximate result of the taking and which could legitimately affect the price a prospective purchaser would pay for the land. Any expenses which are reasonably necessary to adapt the remaining land to use in view of changes to be made in the land taken may properly enter into the damages to be awarded." Bowen v. Ives, 171 Conn. 231, 236, 368 A.2d 82 (1976).
In the present case the Commissioner's appraiser submitted an appraisal report and testified that the damages visited upon the property owner by the state's taking for highway purposes is $6,500. Estimating the square foot market value of the 214 square feet of land taken by easement at $20 per square foot, and giving a credit to the owner of $2,623.84 for certain stone curbing, a portion of a brick walk, a light pole and landscaping, an acquisition value of $6,475.84 was achieved, rounded to $6,500. In essence, the State's appraiser valued only the land taken, and found that the taking had no impact upon the remaining land and building.
The owner's appraiser, using before and after taking values, found the total damages to be $32,200. Although not agreeing with all the assumptions of the owner's appraiser, the court finds his methods of estimate of the damages in this case more realistic, and to have been made in accordance with settled law in Connecticut. "In a condemnation CT Page 17394 case the referee is more than the trier of the facts or an arbiter of differing opinions of witnesses. He is charged by the General Statutes and the decisions of this court with the duty of making an independent determination of value and fair compensation in the light of all the circumstances, the evidence, his general knowledge and his viewing of the premises." (Internal quotation marks omitted) Bowen v. Ives, supra171 Conn. 239.
 I. PERMANENT DAMAGES
In a partial taking, the damages to which the owner is entitled is "the difference between the market value of the whole tract as it lay before the taking, and the market value of what remained of it thereafter and after completion of the public improvement." (Internal quotation marks omitted). Andrews v. Cox, supra, 127 Conn. 457. In the present case the owner's appraiser used the direct sales comparison approach to determine market value of the entire subject premises prior to the taking. After analyzing five direct sales and making adjustments for differentials between the subject property and the comparable sales, the unit value for the subject property was found to be $130 per square foot. The court has reviewed the sales and these findings, and concludes that they are reasonable, and that the market value of the property on the day of taking was 1850 square feet multiplied by $130 per square foot or, rounded, $240,000. Although the State's appraiser used the direct sales comparison approach to value the land taken, he did not appraise the market value of the whole property prior to the taking.
 A.
The first item of permanent damages to which the owner is entitled is the value of the land itself taken by the condemnation. The value of the 4,902 square feet, representing the entire parcel of land, was estimated by the owner's appraiser to be $25 per square foot. Again, a direct sales comparison approach was used wherein nine comparable sales were analyzed. Sale prices range from $8.23 to $22.96 per square foot of land area, and the parcels range in size from 6,000 to 20,000 square feet. When one removes the two parcels with the highest prices per square foot ($22.96 and $21.89), the average price for the remaining seven parcels is $11.86. Nevertheless, noting that the subject parcel is relatively small in size in relation to the comparables, a unit value of $22 per square foot of land area is found by the court to be reasonable. Therefore, the land area value of the subject premises is $107,844, rounded to $108,000 before taking. It is undisputed that 214 square feet were taken by the Commissioner, leaving 4,688 square feet after the condemnation. At $22 per square foot, the market value of the remaining land is $103,136, rounded to $103,000. Thus, the difference in value between $108,000 and CT Page 17395 $103,000 represents a decrease in the market value of the land area of $5,000, being the damages for the physical loss of land suffered by the owner.
 B.
In addition to the physical loss of land, the owner is entitled to receive fair compensation for the decreased desirability of the property or its functional depreciation as a result of the taking. Hicks v.Commissioner of Transportation, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. CV94 0136499 (September 1, 1998, Curran, J.T.R.). "In determining the market value of a remainder after a partial taking, it is proper for the trier to consider all elements which are a natural and proximate result of the taking and could legitimately affect the price a prospective purchaser would pay for the land." Bowen v. Ives, supra, 171 Conn. 236. Decreased desirability in this case results from various factors, including the expenses reasonably necessary to adapt the remaining land in view of the changes made in the land taken. These consist of the depreciated value of the stone curbing, the brick walk, the light pole's base and wiring, and the contributory value of the landscaping. The Commissioner's appraiser has assigned a total value to these items of $2,623.84, rounded to $2,624, which the court deems reasonable. Such items may not be recoverable as such, ". . . but are evidence of elements in the decrease of market value, of which they may be an accurate measure". Id., 236. The court finds that these are costs which the owner, in hindsight, was obliged to expend, and which could legitimately affect the price a prospective purchaser would pay for the property on the day of taking, February 11, 1999. Accordingly, the court finds $2,624 of expenses to be an accurate measure of a further decrease in market value.
Other factors in this case affecting negatively the desirability of the property to a prospective purchaser and therefore, the market value, are a widening of the easterly side of Grove Street resulting in an additional lane of northbound traffic, decreased distance between the subject building and Grove Street, increased speed of traffic and, thereby, increased noise levels. Most affected by noise would likely be the professional office space located in the front of the building closest to Grove Street. It should be noted that one of the factors considered by the owner's appraiser in estimating the decrease in market value was the relocation of the public sidewalk closer to the subject structure. In point of fact, in hindsight, the new sidewalk was not actually built in the easement area, but rather in the location of the former sidewalk[2]. The court will address this issue later in this memorandum.
In estimating the fair market value of the property after the taking, CT Page 17396 the owner's appraiser employed the income approach to value because he found that there were no sales of properties sustaining the adverse conditions created by the taking in areas comparable to the subject property. Therefore, his use of the rental income and capitalization method was appropriate. See Hicks v. Commissioner of Transportation, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. CV94 0136499 (September 1, 1998, Curran, J.T.R.). The court has studied the comparable office rent used by the owner's appraiser, and carefully reviewed his analysis and estimate of decrease in value because of decrease desirability, and concludes that his findings are fair and reasonable. The before taking market rent for the office space is $16 per square foot. For the 982 square foot area of leased office space, the monthly rent is $1,309. The court agrees with the appraiser that it is likely that a typical tenant would negotiate a lower rental rate; that the space would be likely not to appeal to prospective tenants with sensitivity to increased noise levels and it may be likely that there would be longer vacancy periods between tenancies. The tenant's appraiser's choice of $15 per square foot as the estimated market rate after taking is found reasonably accurate. The monthly rental of $1,228 represents a decreased of $81 per month or $972 per year. Applying the appraiser's selected capitalization rate of 10%, of which the court approves as reasonable, the severance damages for office space is $9,720.
Using the same method for the residential unit, the court adopts as reasonable the owner's appraiser's estimate of a decrease in monthly rent of $75, from $1,000 to $925, or $900 per year. Capitalized at 10%, this produces further permanent damage of $9,000.
The court now turns to the issue raised by the fact that the new sidewalk constructed by the Department of Transportation was not placed in the easement area and therefore is not presently substantially closer to the building than before. It is clear, of course, that the full 214 square feet of land was taken for a highway easement, and it is not disputed that the state had and permanently has a right to construct a sidewalk therein. The Supreme Court has established ". . . in highway easement cases, that the landowner is entitled to compensation for severance damages that might result from prospective uses of the easement as well as the damages immediately flowing from the presently contemplated highway improvement project for which the land was taken. [I]t is proper to consider such use of land taken as would in any reasonable anticipation to be the most disadvantageous to the landowner. In calculating severance losses, the trial court must take into consideration the changes contemplated in the improvement and those which are so possible of occurrence in the future that they may reasonably be held to affect market value." (Citations omitted; internal quotation marks omitted). Alemany v. Commissioner of Transportation, 215 Conn. 437, CT Page 17397 445, 576 A.2d 503 (1990). "Applying the principle that the determination of market value requires a consideration of all those elements which an owner or prospective customer would reasonably urge as affecting the fair market price of the land, it becomes at once apparent that to restrict consideration to future changes which are reasonably probable is to rule out changes which, though not within that category, are so possible of occurrence that they might reasonably be held to affect present market value. Such changes may properly be considered. On the other hand, if the possibility of the use of the land taken, to a certain extent or in a certain way, is so remote that it would not enter into the contemplation of a prospective seller or purchaser, that use is not to be regarded in determining the market value of the property, or if the likelihood of such use, while not so remote as to be entirely disregarded would affect the price only to a limited extent, damages should be determined upon that basis." Andrews v. Cox, supra, 127 Conn. 462.
As herein before described, the estimated permanent damages, in addition to the physical loss of property and accompanying expenses, is the reduction in value of the whole property remaining after the taking. However, the easement area is not being presently used for the purposes taken. Although Grove Street was widened by the addition of a lane, apparently the State possessed enough of the highway right of way not to require the use of the easement for a new sidewalk. Nevertheless, the Commissioner has the right to construct a sidewalk in its easement at any time in the future. If the future changes or uses "are so possible or occurrence that they might reasonably be held to affect present market value . . . [s]uch changes may properly be considered." Andrews v. Cox, supra, 127 Conn. 462. However, if the likelihood of such use would affect the price only to a limited extent, ". . . damages should be determinedupon that basis." (Emphasis added). Andrews v. Cox, Id., 462.
The Department of Transportation acquired the easement for sidewalk purposes in conjunction with a project to widen Grove Street. That project has been completed, and a new sidewalk constructed without, however, utilizing the easement area. The court regards the likelihood of State or the city of Stamford coming back in the near future to widen Grove Street further, or to construct a new or additional sidewalk in the easement area to be somewhat remote, but not so remote as to be entirely disregarded by a prospective seller or buyer. The price would likely be affected to a limited extent, and the court determines damages on that basis. It is found that there is a reasonable likelihood of 20% that the easement would be used for sidewalk purposes in the future. Therefore, the owner is entitled to 20% of the after taking severance damage of $18,720, (total reduction in value of the whole property remaining), or $3,744. CT Page 17398
Therefore, there are permanent damages to which the owner is entitled of $5,000 for the physical loss of the land, $2,624 for the decrease in market value due to the expenses caused by the taking, and 20% of $18,720, or $3,744, being the reduction value of the remainder of the property including the building. The total permanent damages are $11,368. Thus, the total property value after the taking amounts to $228,632.
 II. TEMPORARY DAMAGES
In determining the market value of a remainder after a partial taking, it is proper for the trial court to consider all elements which are a natural or proximate result of the taking and which could legitimately affect the price a prospective purchaser would pay for the land. Bowenv. Ives, supra 171 Conn. 236. The mere fact that injuries will be temporary and incident to the period of construction only is no ground for disallowing recovery, since a purchaser might pay less if he knew such injuries were to be inflicted. Id., 238.
In the present case, it is clear from the evidence that the project produced a considerable amount of noise, dust and disturbance to the users of the subject property. A prospective tenant would take that into consideration were he considering renting space in the building. Such a prospect would likely opt to rent comparable premises without such adverse impacts, or demand a rental concession during the period of construction. An existing tenant would likely seek a temporary rent reduction. The owner's appraiser has stated that a prospective tenant would reasonably estimate a construction period of six months. In the court's opinion, a prospective tenant on the day of taking would reasonably believe a period of construction to be four months, and accordingly in this case the court finds that a reasonable period of construction is four months.
The court finds from the evidence that a rental concession, reasonable in amount, is $100 for the first floor office space and $75 for the second floor apartment, for a total monthly rental concession of $175. A reasonable formula for determining total temporary damages is the average between the monthly concession over the construction period and the assumed total loss in rental if the property were vacant at the time construction commenced. See Hicks v. Commissioner of Transportation, supra, (September 1, 1998, Curran, J.T.R.). The same formula was adopted by the owner's appraiser in this case. The State's appraiser found that the taking had no impact on the remaining property and found no temporary damages.
According to the formula, then, the monthly rental concession of $175 over a construction period of four months equals $700. The assumed CT Page 17399 monthly rental loss of $2,309 ($1,309 for the office and $1,000 for the apartment) over the construction period of four months equals $9,236, rounded to $9,200. The average of $700 and $9,200 ($700 + $9,200 ÷ 2) equals $4,950, representing total temporary damages.
 III. INTEREST AND APPRAISER'S FEES
After reviewing all of the testimony and the exhibits in this case, having read all of the briefs of the parties and having viewed the premises, and in light of the amount of compensation paid into court upon the taking by the Commissioner, and considering the ultimate award of this court, the court finds a fair and reasonable rate of interest to be applied to the balance due the owner, as an element of just compensation, to be six percent (6%).
Furthermore, in light of the court's review of the entire file, after its viewing of the premises, and considering the damages found by the court, the court awards a reasonable appraisal fee to the owner in the amount of $1,800, as a further element of just compensation.
Costs shall be taxed in favor of the appellant-owner.
 IV. SUMMARY
The court summarizes its finding of damages to which the owner is entitled as follows:
Value before taking $240,000
 Value after permanent damages $228,632 __________ Total permanent damages $11,368. [$5,000 for loss of physical land; $2,624 loss of value due to expenses; $3,744 for reduction value of remainder (20% of $18,720)]
 Temporary damages $4,950 ___________ Total damages $16,318 Rounded to $16,500
Judgment may enter in accordance with the foregoing, plus interest at the rate of six percent (6%) per annum on the balance due the owner after crediting the monies previously paid into court, plus an appraisal fee of $1,800, plus taxable costs. CT Page 17400
So Ordered.
D'ANDREA, J.T.R.