[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The Commissioner of Transportation (`Commissioner') has filed a Notice of Condemnation and Assessment of Damages pursuant to Connecticut General Statute § 13a-73 (b). The purpose of the condemnation was to acquire an easement upon land on Wilton Road in Westport owned by Jacqueline L. Key, being a full and perpetual easement to slope for the safety of the highway, and remove, use or retain excavated materials, within an area of 1,110 square feet, more or less. The easement area is adjacent to the east property line of the Key property and is shown on the taking map, Exhibit B. Also taken by the Commissioner was a right to enter portions of the land to construct a driveway within an area of 242 square feet, more or less, as shown on the said map. Said right of entry automatically terminates upon completion of the work by the state. The Commissioner's notice assesses the damages for the condemnation at $7,200. June 25, 1999 was stipulated by the parties to be the taking day.
The owner of the property (hereinafter referred to as `owner' or `appellant'), claiming to be aggrieved by the Commissioners action, has filed an application pursuant to C.G.S. § 13a-76 for the reassessment of the damages. The undersigned judge trial referee conducted a hearing in which testimony was given by the appraisers of each of the two parties, exhibits were received, and the court viewed the subject property in the company of both counsel.
The property is located on the westerly side of Wilton Road and is known as 215 Wilton Road, is a half mile from the Merritt Parkway and CT Page 4563 contains one acre (43, 560 square feet) in a one acre zone. The site, in a neighborhood consisting principally of single family dwellings, has a frontage on Wilton Road of 273.28 feet, and there is a steep slope from the easterly boundary of the property down to the road. Most of the land is heavily wooded and shrubbed as is the state property to the east which slopes down to Wilton Road. There is landscaping around the dwelling, and a driveway curves up to the house from the lower, southerly end of the property. The property contains a stonewall along the easterly boundary line, more or less at the top of the slope. The single family dwelling house was built in 1952 and is a ranch style house with 1986 square feet of gross living area with four bedrooms and three baths. It has a cinder block foundation and clapboard exterior walls.
Pursuant to C.G.S. § 13a-73, the land involved was taken "for the layout, alteration, extension, widening, change of grade, and improvement" of Wilton Road, and therefore ". . . the owner of such land shall be paid by the state for all damages." C.G.S. § 13a-73 (b). "The single objective of [an eminent domain] proceeding is to ensure that a property owner shall receive, and that the State shall only be required to pay, the just compensation which the fundamental law promises the owner for property which the State has seen fit to take for public use."Thomaston v. Ives, 156 Conn. 166, 174, 239 A.2d 515 (1968).
"When a portion of a tract of land is taken the rule for estimating the damages to which the owner is entitled, in the absence of unusual circumstances, is thoroughly settled; it is the difference between the market value of the whole tract as it lay before the taking, and the market value of what remains of it thereafter and after the completion of the public improvement." (Citation omitted; internal quotation marks omitted) Andrews v. Cox, 127 Conn. 455, 457, 17 A.2d 507 (1941). "In determining the market value of a remainder after a partial taking, it is proper for the trier to consider all elements which are a natural and proximate result of the taking and which could legitimately affect the price a prospective purchaser would pay for the land. Any expenses which are reasonably necessary to adapt the remaining land to use in view of changes to be made in the land taken may properly enter into the damages to be awarded." Bowen v. Ives, 171 Conn. 231, 236, 368 A.2d 82 (1976).
In the present case the Commissioners appraiser submitted an appraisal report and testified that the damages visited upon the property owner by the state's taking for highway purposes is $9,000. Using as comparables three land sales, the appraiser estimated the square foot market value of the 1,110[1] square foot easement at $7.50 per square foot, for an area value of $8,250. Because the taking consists of an easement rather than a taking of the fee interest, the appraiser assigns fifty percent of the value to the owners retention of a "bundle of rights" to the taking CT Page 4564 land, and finds $4,125 to be the damages resulting from the taking of the easement. The Commissioners appraiser also granted the owner a $3,000 credit for the stonewall removed from the easement area, finding a value of $15 per linear foot for 200 feet of wall. The value of the loss of shrubbery within the easement area was added in the amount of $1,250, achieving a total acquisition value of $8,375, rounded to $9,000. In essence, the State's appraiser valued only the land taken, and found that the taking had no impact upon the remaining land and building.
The owners appraiser, using before and after taking values, found the total damages to be $124,200. Although not agreeing with all the assumptions of the owners appraiser, the court finds most of his methods of estimate of the damages in this case more realistic, and to have been made in accordance with settled law in Connecticut. "In a condemnation case the referee is more than the trier of the facts or an arbiter of differing opinions of witnesses. He is charged by the General Statutes and the decisions of this court with the duty of making an independent determination of value and fair compensation in the light of all the circumstances, the evidence, his general knowledge and his viewing of the premises." (Internal quotation marks omitted) Bowen v. Ives, supra171 Conn. 239.
 I. PERMANENT DAMAGES
In a partial taking, the damages to which the owner is entitled is "the difference between the market value of the whole tract as it lay before the taking, and the market value of what remained of it thereafter and after completion of the public improvement." (Internal quotation marks omitted). Andrews v. Cox, supra, 127 Conn. 457. In the present case the owners appraiser used the direct sales comparison approach to determine market value of the entire subject premises prior to the taking. After analyzing four direct sales and making adjustments for differentials between the subject property and the comparable sales, the value for the subject property was found to be $500,000. The court has reviewed the sales and these findings, and concludes that they are reasonable, and that the market value of the property on the day of taking was $500,000. Although the State's appraiser used the direct sales comparison approach to value the land taken, he did not appraise the market value of the whole property prior to the taking.
 A.
The first item of permanent damages to which the owner is entitled is the value of the land itself taken by the condemnation. The value of the one acre site, or 43,560 square feet, was estimated by the owners appraiser to be $350,000 or $8.00 per square foot (rounded) which the CT Page 4565 court finds to be reasonable. The area of the easement taken is 1,110 square feet, leaving 42,450 square feet after the condemnation. At $8.00 per square foot, the market value of the remaining land is $339,600. Thus, the difference in value between $350,000 and $339,600, represents a decrease in the market value of the land area taken of $10,400. The court accepts the conclusion of the state's appraiser that because only an easement was taken, and not the fee to the land, the owner retains a certain valued interest in the easement area. The court concludes that the appraisers finding of a fifty percent loss is a reasonable estimate, and therefore, the sum of $5,200 represents the damages for the physical loss of land suffered by the owner because of the taking of the easement.
 B.
In addition to the physical loss of land, the owner is entitled to receive fair compensation for the decreased desirability of the property or its functional depreciation as a result of the taking. Hicks v.Commissioner of Transportation, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. CV94 0136499 (September 1, 1998, Curran, J.T.R.). "In determining the market value of a remainder after a partial taking, it is proper for the trier to consider all elements which are a natural and proximate result of the taking and could legitimately affect the price a prospective purchaser would pay for the land." Bowen v. Ives, supra, 171 Conn. 236. Decreased desirability in this case results from various factors, including the expenses reasonably necessary to adapt the remaining land in view of the changes made in the land taken. This consists of the depreciated value of the stonewall. The Commissioners appraiser has assigned a value to this of $15 per linear foot, and found the stonewall to have been 200 feet in length, for a loss in value of $3,000. The owners appraiser annexed to his appraisal report an estimate of $21,000 submitted by a mason contractor for the construction of approximately 350 linear feet of wall. Although it was conceded the wall was probably only 200 feet in length, the appraiser retained the $21,000 estimate because the existing stones which the mason contemplated in his bid for a 350 foot wall were no longer available, and the appraiser reasoned that other stones would have to be brought in or otherwise located. The court rejects both appraisers' estimates and finds a reasonable value to be $37.50 per linear foot or $7,500. Such items as the cost of a stonewall may not be recoverable as such, ". . . but are evidence of elements in the decrease of market value, of which they may be an accurate measure". Id., 236. The court finds that this cost could legitimately affect the price a prospective purchaser would pay for the property on the day of taking, June 25, 1999. Accordingly, the court finds $7,500 of expenses to be an accurate measure of a further decrease in market value. CT Page 4566
Other factors in this case affecting negatively the desirability of the property to a prospective purchaser and therefore, the market value, are the excavation of the hillside adjacent to the owners property, and including the slope easement area, causing extensive natural screening to be removed between the owners home and Wilton Road. The court reviewed, as exhibits in evidence, photographs of the areas where the excavating occurred, as well as a videotape of the premises before and after the work. As heretofore stated, the court also personally viewed the premises in the company of counsel. Wilton Road is heavily traveled and the loss of screening has a significant negative impact on the visual benefits of the property, as well as causing an increase in the noise from the traffic on the road. Although some of the screening removed consisted of trees and shrubs located on the state land on the hill between the house and Wilton Road, this excavation has caused a loss in market value for which the owner is entitled to be compensated. "Although market value is ordinarily the measure of just compensation, this is not necessarily the measure in all cases. Just compensation is an equitable, rather than a strictly legal concept". Meriden v. Ives, 165 Conn. 768, 775, 345 A.2d 13
(1974). "The question of what is just compensation is an equitable one rather than strictly legal or technical one. The paramount law intends that the condemnee shall be put in as good position pecuniarily by just compensation as he would have been had the property not been taken."Alemany v. Commissioner of Transportation, 215 Conn. 437, 444, 576 A.2d 503
(1990). "The court should consider any and all damages which would foreseeably follow from the proper construction of the project, including any damages to the remainder which is a necessary, natural and proximate result of the taking." D'Addario v. Commissioner of Transportation,172 Conn. 182, 185, 374 A.2d 163 (1976); Budney v. Ives, 156 Conn. 83,88, 239 A.2d 482 (1968). "[W]here the use of the land taken constitutes an integral and inseparable part of the single use to which the land taken and other adjoining land is put, the effect of the whole improvement is properly to be considered in estimating the depreciation in value of the remaining land. Whether such a situation exists or not would often, perhaps usually, present a question to be determined by the trier . . ." (Citations omitted) Andrews v. Cox, 129 Conn. 475, 482,29 A.2d 587 1942. The Commissioners removal of the trees and virtually all screening shrubbery, both from the easement area itself and from the hillside adjacent thereto and down to Wilton Road, required for the proper construction of the project, proximately resulted in damages to the owner which were clearly necessary and natural, and was "an integral and inseparable part of the single use to which the land taken and other adjoining land" was put. Id., 482.
In estimating the fair market value of the whole property after the taking, the owner's appraiser selected 15% as fairly representing the CT Page 4567 impact of the taking.[2] Instead, the court employs the income approach to value, finding that use of the rental income and capitalization method is appropriate and reasonable. See Hicks v. Commissioner ofTransportation, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. CV94 0136499 (September 1, 1998, Curran, J.T.R.). The owner's appraiser, using four comparable rentals to determine temporary damages, found the rental value of the subject premises prior to the taking to be $2,750[3], which the court finds to be reasonable. Accordingly, the rental value of the 1986 square foot dwelling before taking is $16.62 per square foot (2750 x 12 ÷ 1986 = 16.62). Because of the negative impact on the desirability and therefore the market value of the property, caused by the state's construction project, the court finds that a ten percent decrease in the rental value of the premises is reasonable. This results in a decrease in rental value of $268 per month[4], or $3216 per year. From its general knowledge, the court chooses a capitalization rate of 10% and therefore finds a loss to the owner of the property, representing permanent severance damages, in the amount of $32,160, rounded to $32,000.
Therefore, in accordance with the evaluation hereinbefore explained, there are permanent damages to which the owner is entitled of $5,200 for the physical loss of the land, $7,500 for the decrease in market value due to the expenses caused by the taking, being the depreciated value of the stonewall, and $32,000 being the reduction value of the remainder of the property including the building. The total permanent damages are $44,700. Thus, the total property value after the taking amounts to $455,300.
 II. TEMPORARY DAMAGES
In determining the market value of a remainder after a partial taking, it is proper for the trial court to consider all elements which are a natural or proximate result of the taking and which could legitimately affect the price a prospective purchaser would pay for the land. Bowenv. Ives, supra 171 Conn. 236. The mere fact that injuries will be temporary and incident to the period of construction only is no ground for disallowing recovery, since a purchaser might pay less if he knew such injuries were to be inflicted. Id., 238.
It's clear to the court that the owner here suffered temporary damages from the construction project. The westerly boundary of the easement taken is a mere 27 feet from the house. Excavation for sloping was conducted along the boundary from that point easterly, down to the road. A temporary right was taken to use 242 square feet to rebuild the owner's driveway where it meets the road. Although there is no evidence of the owner being prohibited from using the driveway in the period during which CT Page 4568 the state possessed the temporary right in the driveway, the court finds that a prospective tenant on the day of condemnation would take into consideration the proposed project on and near the property as well as the temporary right to a portion of the driveway. Such a prospect would likely opt to rent comparable premises without such adverse impacts, or demand a rental concession during the period of construction. Because the owners appraiser believed that there was some uncertainty as to the design of the taking, he estimated a two year period of disruption. In the court's opinion, a prospective tenant on the day of taking would reasonably believe a period of construction to be one year, and accordingly in this case the court finds that a reasonable period of construction is twelve months. In all other respects, the court finds the methodology of the owners appraiser in estimating temporary damages to be reasonable and appropriate. He compared the subject property to four comparable rentals, resulting in a before taking rental value of $2750 per month.[5] The court further finds that this appraiser is correct in estimating rent loss reflecting the adverse impact of the disruption at 20%. Therefore, the court finds temporary damages to the subject property caused by the construction project, as well as the temporary right to the driveway exercised by the state, to be represented by the sum of $6,600. (2750/month x 12 months x 20% = 6,600).
Before summarizing these conclusions, the court addresses the issue of damages claimed by the owner for the expense, considered likely by her appraiser, to be incurred in seeking a variance from the zoning regulations of the town of Westport, or engaging the town in a legal dispute over the pertinence of the regulations in this case. Since the property is exactly one acre in area, any reduction in area will produce a non-conforming lot. The same is true as to set-back requirements applicable to the subject house. The owners appraiser contends that, in his experience, the Westport Planning and Zoning Commission will consider the taking of this easement to slope tantamount to a condemnation of the fee, thus, rendering the lot less than one acre in area, and in violation of the set-back requirement of 30 feet from its boundary line. The appraiser includes in his appraisal a letter of the director of Planning and Zoning for the town of Westport, dated June 7, 2000, which states that "the taking of any portion of the property will make this property non-conforming. Therefore, it appears that a variance will be required." Nowhere in the letter is there an acknowledgment that what is taken is an easement to slope and not the fee to any portion of the premises, and thus its accuracy as to the consequences of the taking in this case is dubious. In any event, the court finds that the taking in this case has no effect upon the area of the lot or the location of its boundaries. It in fact, the zoning regulations were violated by the premises because of the acquisition, it was the state's obligation to obtain any variances required.[6] The court declines to speculate that the owner will incur CT Page 4569 any significant expenses in this regard.
 III. INTEREST AND APPRAISER'S FEES
After reviewing all of the testimony in this case, the exhibits and the briefs of the parties, and having viewed the premises, and in light of the amount of compensation paid into court upon the taking by the Commissioner, and considering the ultimate award of this court, the court finds a fair and reasonable rate of interest to be applied to the balance due the owner, as an element of just compensation, to be six percent (6%).
Furthermore, in light of such considerations, the court awards a reasonable appraisal fee to the owner in the amount of $2,800, as a further element of just compensation.
Costs shall be taxed in favor of the appellant-owner.
 IV. SUMMARY
The court summarizes its finding of damages to which the owner is entitled as follows:
Value before taking $500,000
Value after permanent damages $455,300
 Total permanent damages $44,700 [$5,200 for loss of physical land; $7,500 loss of value due to expenses (stonewall); $32,000 for reduction value of remainder]
Temporary damages $6,600
Total damages $51,300 Rounded to $51,500
Judgment may enter in accordance with the foregoing, plus interest at the rate of six percent (6%) per annum on the balance due the owner after crediting the monies previously paid into court, plus an appraisal fee of $2,800, plus taxable costs.
So Ordered.
____________________ D'ANDREA, J.T.R. CT Page 4570