[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The Commissioner of Transportation ("Commissioner") has filed a Notice of Condemnation and Assessment of Damages pursuant to Connecticut General Statutes, Section 13a-73 (b). The purpose of the condemnation was to acquire a portion of the appellants' land on East Putnam Avenue, U.S. Route 1, in Greenwich for the purpose of the layout, alteration, extension, widening, change of grade and improvement of the said highway. The owners of the property taken, and the appellants from the Commissioner's assessment of damages of $77,000,[1] are George and Frances Zupaniotis.
A question of subject matter jurisdiction, raised because this appeal was filed beyond the time period required by C.G.S. § 13a-76, was addressed and resolved by the court previously in a Memorandum of Decision dated October 9, 2002. The court found jurisdiction because no notice of the filing of the Assessment of Damages was ever sent by the Superior Court to the appellants as required by C.G. S. § 13a-73 (b) and therefore the six months time period did not commence running until actual notice was received by the property owners. Zupaniotis v.Commissioner of Transportation, Superior Court, judicial district of Stamford/Norwalk at Stamford, docket number CV01 0185037 (October 9, 2002, D'Andrea, JTR).
The notice of condemnation and assessment of damages was filed with the clerk of the Superior Court in the judicial district of Stamford/Norwalk at Stamford on July 30, 1998 purporting to take for the State 2, 334 square feet of the appellants' land, as well as a perpetual easement to slope within an area of 278 square feet and a perpetual easement to construct and maintain traffic structures within an area of 98 square feet, more or less. A right of entry to relocate a stone curb and construct a driveway was also taken, the latter easement to terminate automatically upon completion of the work by the State.
The total land area, prior to the partial taking, was 17, 306 square CT Page 15334-at feet. It is situate in Greenwich on the northeasterly corner of the intersection of East Putnam Avenue and Riverside Lane and is improved by an automotive quick service building, asphalt driveway, parking spaces and landscaped and lawn areas. The building, constructed in 1990, is one-story, with brick exterior and composition roofing. It contains a customer waiting area, office area, restrooms and two service bays, each with spaces for two cars in tandem.
The owners of the property (herein referred to as "owners" or "appellants"), claiming to be aggrieved by the Commissioner's action, have filed an application pursuant to C.G.S. § 13a-76 for a reassessment of the damages. The undersigned judge trial referee conducted a hearing in which testimony was given by the appraisers of each of the two parties, exhibits were received, and the court viewed the subject property in the company of both counsel.
"The single objective of (an eminent domain) proceeding is to ensure that a property owner shall receive, and that the State shall only be required to pay, the just compensation which the fundamental law promises the owner for property which the State has seen fit to take for public use." Thomaston v. Ives, 156 Conn. 166, 174, 239 A.2d 515 (1968).
"When a portion of a tract of land is taken the rule for estimating the damages to which the owner is entitled, in the absence of unusual circumstances, is thoroughly settled; it is the difference between the market value of the whole tract as it lay before the taking, and the market value of what remains of it thereafter and after the completion of the public improvement." (Citation omitted; internal quotation marks omitted) Andrews v. Cox, 127 Conn. 455, 457, 17 A.2d 507 (1941). "In determining the market value of a remainder after a partial taking, it is proper for the trier to consider all elements which are a natural and proximate result of the taking and which could legitimately affect the price a prospective purchaser would pay for the land. Any expenses which are reasonably necessary to adapt the remaining land to use in view of changes to be made in the land taken may properly enter into the damages to be awarded." Brown v. Ives, 171 Conn. 231, 236, 368 A.2d 82 (1976).
Despite this well settled rule, both the State's and owners' appraisers considered the value of the land only, before and after taking, stating that the taking had no impact on the building. Because this case was tried on this theory by both parties, and because there was no evidence before the court as to the before and after values of the whole tract, the court was required to follow the appraisers' lead.
Both appraisers used the direct sales comparison approach (market value CT Page 15334-au method) to value the land before the condemnation. Each used three comparables to arrive at his opinion. The taking date, as of which the value of the property is to be determined, is July 30, 1998. However, the State's appraiser, in his written appraisal, valued the property as of December 20, 1997, that apparently being the date on which his appraisal was performed. He testified that the land had the same value as of the taking date. Because he found no usable, comparable sales of commercially zoned, vacant sites in Greenwich at the time of his appraisal, the Commissioner's appraiser used three comparable sales in Stamford, Norwalk and Westport. After applying pertinent adjustments to each comparable, the Commissioner's appraiser found the square foot value of the subject land to be $30.00. This appraiser erroneously believed the total land area before taking was 16, 900 square feet.[2] He thus found the land value prior to condemnation to be $507,000. After the 2, 334 square feet were taken, the 14, 566 square feet remaining was valued at $436,980. The state found further diminishment in value of $2,205 by the taking of a 98 square foot easement for traffic structures, and of $2,085 by the 278 easement to slope.[3] The appraiser also assigned $2,700 as additional damages caused by the loss to the owners of twenty shrubs and three hardwood trees, two underground sprinkler heads and piping, and the poured concrete sign base. Therefore, the Commissioner's written appraisal report presents a value of estimated damages to be $77,100, rounded to $77,000. In his testimony in court, this appraiser updated and revised his opinion as to value because he found out during the trial for the first time that the condemnation caused a loss of one parking space on the property. He valued this one parking space at $43,700 raising his opinion of value of estimated damages to $120,700.
The appraiser for the owners submitted an appraisal report dated December2001, but valuing the subject property as of December 20, 1997, just as was done in the report of the state's appraiser. There is, however, testimony in the record of the owners' appraiser that he also valued the land of the owners subsequent to the taking by the state.[4]
Based on three comparable sales in Greenwich, albeit sales that took place after July 30, 1998, the day of taking, this appraiser valued the land taken at $63.00 per square foot for a before taking value of $1,090,100., and an after taking value due to the condemnation of $943,100. In so doing, he applied pertinent adjustments, including adjustments for the time of sale, trending back his values to the appropriate valuation date. Thus his value due to the loss of the physical land (2, 334 square feet) is $147,000. Based on $63.00 per square foot, he calculates the value for the 98 square foot easement to be $4,631.00, and the easement to slope of 278 square feet to be $4,379.00[5] The major disputes between the litigants and their appraisers are the square foot value of this Greenwich land, and the highest and best use of the CT Page 15334-av property after the condemnation.
 I.
The first issue to determine is the value of the physical loss of the land. In a partial taking, the damages to which the owner is entitled is the difference between the market value of the whole tract as it lay before the taking, and the market value of what remains of it thereafter and after completion of the public improvement. Andrews v. Cox, supra,127 Conn. 457.[6] The Commissioner, using three comparable sales in other towns found the loss of value to the owners to be $74,310.[7] The owners, analyzing three comparable sales in Greenwich, concluded that the physical loss of land is $156,010.[8] The court accepts the square foot values found by the owners' appraiser using Greenwich land sales adjusted for time and location. Neither appraiser found any comparable land sales in Greenwich which occurred prior to the taking date, and therefore it is reasonable to compare sales which occurred in Greenwich subsequent to the taking and trending the value back to the appropriate date. This is what the appellants have done by adjusting the comparables for time of sale. The sales occurred approximately three and one half months and eight months subsequent to the taking. The court finds this method superior to comparing vacant commercially-zoned land in three other communities sold approximately fourteen months, twenty-two months, and twenty-seven months, respectively, prior to the taking date. The commissioner complains that use of post-condemnation sales is improper, citing SheltonSewer Authority v. DeFilippo, 2 Conn. App. 355, 478 A.2d 623 (1984). InDeFilippo, the property owner had evidence that neighboring houses did not require variances in 1979, some five years after the condemnation date, and attempted unsuccessfully to use this evidence to prove value in 1974. These facts are not analogous to this case, where market values were properly trended back via time adjustments.
Accordingly, the court finds the value of the appellants' subject land, consisting of 17, 306 square feet prior to condemnation, to be $63.00 per square foot or $1,090,278. After taking, in fee, of 2,334 square feet, the remainder of 14,972 square feet is valued at $943,236., constituting a loss in value of the owners' land of $147,042.
The owners are also entitled to be paid the value of the slope easement of 278 square feet and the perpetual easement for traffic structures of 98 square feet. Applying the percentage factors used by both appraisers because of the nature of the interest (easements) taken,[9] the court finds the loss in property value to be $4,379. for the 278 square foot easement to slope, and $4,631. for the 98 square foot easement for structures. Therefore, the total loss in value of the physical land of CT Page 15334-aw the appellants is $156,052.
 II.
In addition to the loss of value of the physical land taken, in a partial taking the appellant is entitled to severance damages. "In determining the market value of the remainder after a partial taking, it is proper for the trier to consider all elements which are a natural and proximate result of the taking and could legitimately affect the price a prospective purchaser would pay for the land." Bowen v. Ives, supra,171 Conn. 236. The appellants advance their theory to the court that because of the taking, customers' cars turning into their site from the west bound lane of East Putnam Avenue will be hampered and the ability of cars to queue up for service will be reduced. The appraiser opines that therefore the highest and best use of the property after the condemnation will no longer be a drive through automobile lubrication and service center. Rather, presuming that the alternate entrance directly from East Putnam Avenue will be made available for access, the highest and best use of this property would be an alternate use in according with zoning regulations, such as a combination of retail, professional and office uses. Since the size of such a prospective building is governed by the number of parking spaces available, the appellants' claim is that their loss of value due to the taking includes severance damages for the number of parking spaces lost, which is claimed to be eight, based on a letter by their engineer, Anthony D'Andrea. Their appraiser uses an income/capitalization approach to find the loss of these spaces to be valued at $17,900 each, for an estimated value of the eight loss spaces to be approximately $140,000.
The commissioner's position is that the present entrance to the property from Riverside Lane is adequately accessible from any direction after the partial taking. An engineer, Paul Smith, testified that cars with the least turning abilities will have no difficulty in negotiating the turns required by this property. According to the commissioner, the highest and best use of the property remains as a drive through automobile lubrication and service center. During the course of the trial, the state's appraiser apparently was advised that one parking space would be lost to the appellants because of the taking. During his testimony, he revised his written appraisal by adjusting the site value downward from the comparables to reflect the loss of one space. His revised opinion of appellants' damages became $120,700.
The court cannot accept the appellants' theory of severance damages caused by the partial taking. Their appraiser relied upon a hearsay letter of an engineer to determine that the premises were no longer CT Page 15334-ax viable for the present drive through service use, and that the highest and best use would now be a combined retail, professional and office use. He cites no market studies to determine the economic feasibility of such a use on the premises, and presented no evidence of a reasonable probability that a site plan for such a proposal would gain approval by Greenwich zoning and building authorities. See Budney v. Ives,156 Conn. 83, 239 A.2d 482 (1968). More importantly, however, the court accepts the trial testimony of the commissioner's engineer, Paul Smith, who also was Project Manager on this project. Using templates developed by the American Association of State Highway Transportation Officials, he explained how the turning area for the westbound lane East Putnam Avenue onto Riverside Lane and into the entrance drive of the subject premises would not limit the ability of any passenger car or other appropriate vehicle to access the premises. Such vehicles will make the maneuver in the same way as before the taking, and without any need to adjust the steering wheel or make other corrective movements to accomplish the turn. During the court's visit to the premises with counsel for both parties, Mr. Smith's findings appeared to the court to be accurate. Mr. Smith confirmed that one parking space will be lost because of condemnation.
The court finds that the present use of the premises as a drive through automotive lubrication and service center is the highest and best use of the premises after the state's taking. Additional damage to which the appellants are entitled consist of the value of landscaping, two underground sprinkler heads and piping, and a poured concrete sign base. The owners are entitled to receive full compensation for the decreased desirability of the property or its functional depreciation as a result of the taking. Hicks v. Commissioner of Transportation, Superior Court, judicial district of Stamford/Norwalk at Stamford, docket number CV94 0136499 (September 1, 1998, Curran, JTR.) "In determining the market value of a remainder after a partial taking, it is proper for the trier to consider all elements which are a natural and proximate result of the taking and could legitimately affect a price prospective purchaser would pay for the land." Brown v. Ives, supra, 171 Conn. 236. Decreased desirability in this case results from various factors, including the loss of value of two underground sprinkler heads and piping, a poured concrete sign base, and the contributory value of landscaping. Such items may not be recoverable as such, ". . . but are evidence of elements in the decrease of market value, of which they may be an accurate measure". Id, 236. Each appraiser valued as the same, the two sprinkler heads and pipes ($300) and the poured concrete sign base ($200), and the court accepts these values. The state's value of the landscaping totals $2,200, while the appellants' appraiser, using a landscaper's estimate of replacement cost, values it at $7,115. The court places a value on this CT Page 15334-ay item of $3,500. "In a condemnation case the referee is more than the trier of the facts or an arbiter of different opinions of witnesses. He is charged by the General Statutes and the decisions of this court with the duty of making an independent determination of value and fair compensation in the light of all the circumstances, the evidence, his general knowledge and his viewing of the premises." (Internal quotation marks omitted) Bowen v. Ives, supra, 171 Conn. 239. The court finds that these are the costs which the owner is obliged to expend and which legitimately affect the price a prospective purchaser would pay for the property on the day of taking. Accordingly, the court finds $4,000 of expenses to be an accurate measure of further decrease in market value.
The final value to be addressed by the court is that of severance damages for the loss of one parking space. The court approves the income/capitalization method adopted by the owners' appraiser, and finds the value of one parking space to be $17,900. There was no evidence presented with respect to temporary damages, and the court awards none.
 III.
After reviewing all the testimony and the exhibits in this case and having read all the briefs of the parties and having viewed the premises, the court finds a fair and reasonable rate of interest to be applied to the balance due the owner, as an element of just compensation, to be six percent (6%).
Furthermore, in light of the court's review of the entire file, after its view of the premises and considering the damages found by the court, the court awards a reasonable appraisal fee to the owners as a further element of just compensation. The evidence did not contain a bill or statement of the owners' appraiser for his appraisal. In the event the parties cannot agree as to the reasonableness of the appraisers requested fees, upon motion and hearing the court will determine a reasonable fee.
 IV. Summary
The court summarizes its findings of damages to which the owners are entitled as follows:
 Value before taking $1,090,278. Value after taking 934,226. __________
 Damages for loss of physical land $ 156,052. (2,334 sq. feet in fee; 278 sq. feet CT Page 15334-bz for easement to slope; 98 sq. feet easement for traffic structures)
 Additional damages $ 21,900. ($4,000 for loss of value due to expenses; $17,900 severance damages for loss of one parking space) __________
TOTAL DAMAGES $ 177,952. rounded to $178,000.
Judgment may enter in accordance with the foregoing, plus interest at the rate of six percent (6%) per annum on the balance due to owners after crediting the monies previously paid into court, plus a reasonable appraisal fee in accordance with this decision, plus taxable costs.
So Ordered.
 ___________________ D'ANDREA, JTR